SAN ANTONIO LIGHT PUBLISHING COMPANY V. DORA C. LEWY.

Decided October 21, 1908.

**1.—Libel—Pleading.**

In a suit for libel a petition which alleges the essential statutory ingredients of libel and which copies literally the alleged libel, is good against a general demurrer. It is not necessary for a pleader to anticipate and avoid that which, if pleaded and proved, would defeat plaintiff's action.

**2.—Same—Malice.**

In an action for libel an allegation "That the defendant herein contriving and maliciously intending to injure plaintiff in her good name, fame and credit and to bring her into public hatred, contempt and disgrace among her neighbors and all good citizens of this State, etc., was not subject to special exception on the ground that it did not aver any fact but stated merely the opinion or conclusion of the pleader. It is the usual form of alleging malice in actions of this character.

**3.—Same—Financial Injury.**

To render a publication libelous it is not necessary to allege it exposed or tended to expose the complainant to financial injury.

**4.—Same—Effect of Publication.**

When a publication is in fact libelous and is set out at length in plaintiff's petition, it is not necessary to allege that said publication tended to and did in fact expose the plaintiff to public hatred, etc.

**5.—Same—Innuendo.**

Plaintiff's construction or interpretation by innuendo of an alleged libelous publication is not a subject of exception to the petition. It presents a question of fact for the jury which the plaintiff must prove and which the defendant may disprove or avoid.

**6.—Same—Mental Suffering.**

In an action for damages for libel it is not necessary to aver the nature, character or extent of the mental suffering caused by the publication of the libelous article, nor to allege any mental suffering at all. This may be inferred from proof of the libel, and adequate damages allowed.

**7.—Same—Pleading—Reckless and Wilful Publication.**

In an action for libel, an allegation that "The defendant published and caused to be published of and concerning plaintiff the aforesaid article recklessly and willfully, without having made any proper and sufficient investigation of the truth of the charges therein contained," is not subject to exception on the ground that it stated merely the opinion or conclusion of the pleader and did not state any facts.

**8.—Same—Financial Injury—No Issue—Charge.**

Where, in an action based upon libel, no issue as to financial injury is presented by the pleading and proof, it was error for the court to include financial injury as an element of damage in its definition of libel. But in view of an explicit charge to the jury not to consider any financial injury suffered by plaintiff in estimating her damages, the charge was harmless.

**9.—Same—Authorship—Assumption of Fact—Charge.**

In an action for libel, there being no conflict in the evidence as to the fact that the defendant owned and published the newspaper in which the libelous article appeared, the court was justified in assuming in its charge that the article was published by the defendant.

**10.—Same—Truth as Defense.**

The truth of the matter published is a complete defense to action for libel both at common law and under our statute, but to be available it must be plead.

**11.—Same—"Good Name"—Definition.**

The phrase "good name" is synonymous with reputation.

**12.—Same—Financial Loss—Charge Construed—Act of 1901.**

In an action for libel, the following charge, "If you find for the plaintiff, then you should award her such compensatory damages as would ordinarily and probably result from the article as published, and in estimating her damages, if any, you may consider plaintiff's mental suffering, if any, caused by the publication of said article, but you can not allow her any exemplary damages." Held, not subject to the objection that it authorized a recovery for financial loss. The Act of 1901 does not undertake to state the elements of damages in a civil action for a libelous publication in a newspaper, but leaves the measure of damages, save as to certain matters of mitigation, as it was before the enactment.

**13.—Same—Statute of 1901 Construed—Privileged Publication.**

If comment upon and criticism of official acts and matters of public concern is made and published, and it is in fact libelous, the statute of 1901 does not exempt the publisher from the consequences of the publication unless it be shown that such comment and criticism is fair and reasonable. Probable cause for making the comment or criticism is not a factor to be considered in determining whether or not it is privileged.

**14.—Customs Duties—Right of Seizure.**

The officers of the customs service are not authorized by the laws of the United States to enter a private residence, search for and seize property without warrant, even though they have reasonable cause to suspect that the property has been imported contrary to law.

**15.—Laws of United States—Proof of.**

The courts of the several States take judicial knowledge of the laws of the Federal Government, and testimony as to what the laws are, is not admissible. Testimony as to official acts in making a seizure of property believed to have been smuggled, considered, and held irrelevant.

**16.—Libel—Malice—Effect.**

Proof of actual malice on the part of a publisher of a libelous article prevents the publication from being privileged, though it would otherwise be so.

**17.—Libel—Official Proceedings—Matters of Public Concern.**

Newspaper comments on official proceedings which are neither true, fair nor impartial, are not privileged, even though they be upon matters of public concern and are published for general information.

**18.—Libel—Belief—Probable Cause.**

Probable cause for believing the truth of matters contained in a libelous article, while it may mitigate the damages, will not justify its publication.

**19.—Smuggling—Definition.**

Smuggling consists of the clandestine introduction of goods subject to duty with the intent to defraud the Government.

**20.—Libel—Mental Suffering.**

Mental suffering on the part of the person defamed is one of the direct results of the publication of libelous matter, and in an action for libel the plaintiff may recover compensation therefor.

**21.—Trial—Improper Evidence—Refusal to Strike Out—Practice.**

A party who introduces improper evidence can not complain of the refusal of the court to strike out the same on his motion.

**22.—Libel—Privileged Publication—Charge.**

In an action for libel, a charge upon the issue of privilege which is in the language of the statute is proper, and the refusal of a requested charge to the effect that the defendant was not required to prove its defense of privilege literally but may prove the same in substance and fact, was not error.

**23.—Same—Charge.**

In an action for libel the court properly refused the following requested instruction "In determining the issue as to whether the alleged article tended to injure the reputation of the plaintiff and thereby expose her to public hatred, contempt or ridicule, you may look to the cause and circumstances of its publication and the entire language used, because though some language used may be defamatory if it stood by itself, still other language in said article may so limit or qualify its meaning in your opinion as to prevent the article as a whole from being libelous," because not warranted by the alleged libelous article.

**24.—Same—Argument of Counsel.**

In commenting upon a libelous article in a newspaper, counsel for plaintiff said to the jury in his argument, "What do you reckon Mrs. L. (the plaintiff) thought next morning when she read that article in the paper?" Held, proper and legitimate argument upon evidence before the jury.

**25.—Same—Official Report—Hearsay.**

What a customs official reported to his superior officer as to what the party investigated said to him, and his official conclusions thereon, is hearsay and irrelevant to any issue in a suit for libel, the said report not being mentioned in or commented upon in the libelous article.

Appeal from the Fifty-seventh Judicial District, Bexar County. Tried below before Hon. A. W. Seeligson.

*Nat B. Jones* and *Marcus W. Davis,* for appellant.—A publication upon a subject which is, under the statute, privileged, if made in good faith and upon probable cause, with the belief that the statements made therein are true, though they be untrue, will not subject the publisher to damages at the instance of the person claimed to be libeled. Express Pub. Co. v. Copeland, 64 Texas, 357; Libel Law, 1901, Sayles' Sup., p. 319; Cooley on Torts, 217; Chapman v. Calder, 14 Penn. St., 365; Briggs v. Garrett, 56 Am. Rep., 274.

To constitute reasonable and fair comment upon official proceedings, published for general information, it is not necessary that the entire publication be literally true; if it is substantially true, great latitude is allowed the publisher in commenting on such proceedings. Sup. to Sayles' Civ. Stats., p. 319, par. 3, prop. 4; Bearce v. Bass, 88 Me., 521; 51 Am. St. Rep., 446; Triggs v. Sun Pr. & Pub. Ass'n, 103 Am. St. Rep., 841-850; Cherry v. Des Moines Leader, 54 L. R. A., 855.

Though comments upon official proceedings are not fair, true and impartial, yet the publication of such comments is privileged, provided

they are reasonable and fair comments on matters of public concern and published for general information.   Same authorities.

Even though matters of comment in a published article are of a libelous character, still, if they were reasonable and fair inferences with reference to matters of public concern, and published in good faith and upon probable cause for general information, the publisher can not be held liable for the publication of the same.   Same authorities.

If the nature and character of goods are misrepresented by the owner to the customs officials, upon entering the United States, so that the said officials are thereby induced to forego a full inspection or examination, and the goods are subject to duty and are entered without the payment of same, the person so misrepresenting the facts is guilty of smuggling. 2 Fed Stats. (annotated), p. 619, sec. 9; 56 U. S., 185; Keck v. United States, 172 U. S., 447; 2 Bouvier, p. 1009; Swearingen v. United States, 161 U. S., 446; United States v. Wong Kim Ark, 169 U. S., 649.

Defendant is not required to prove its defense of privilege literally, for said defense is made out if it is proven in substance and in fact. Cranfill v. Hayden, 75 S. W., 576.

In determining whether an article is libelous or not it is proper and necessary for the jury to consider, under an appropriate charge, the cause and circumstances of its publication, together with the entire language used, as some of the language used may be defamatory, if considered alone, while other language therein contained may so limit or qualify its meaning as to prevent it as a whole from being libelous. Cranfill v. Hayden, 97 Texas, 560; Paxton v. Woodward, 107 Am. St. Rep., 416.

The court erred in the trial of this cause in sustaining plaintiff's exception to a question put by defendant to its witness, Henry C. S. Smith, and asking him if he did not report to his superior officer, Cummings, as a part of his official proceeding against the plaintiff, for a forfeiture of the goods imported by her, that he did not believe that this last importation was her first offense, and that plaintiff had admitted she brought over stuff from Germany before, and as soon as she disposed of one lot or supply she went and got others, because said Smith's official investigation, together with his report of what plaintiff had said to him as an official, and his official conclusion thereon, were admissible for the purpose of showing, and was offered solely for the purpose of showing, the official proceedings had by the United States in said proceeding against the plaintiff.

The court erred upon the trial of this cause in sustaining plaintiff's objection to the following question of defendant to its witness, Henry C. S. Smith, being one of the officers of the United States engaged in said official investigation against plaintiff: "Q. Now, I will ask you if, as a part of your investigation in that case, and your conversations with Mrs. Lewy, if you did not reach the conclusion, and if that was not your official conclusion, that this was not her first offense in importing goods to this country without paying duty?" because the article complained of as libelous purported to be founded upon the interviews of one Shoaf, a reporter for this defendant, had with said Henry C. S. Smith, and his official acts and conclusions in the premises were the conclusions and actions of the United States, and were admissible for the purpose of showing the official proceedings against plaintiff, and

were offered for said purpose only, and in connection therewith defendant stated that it expected to receive from said witness an affirmative answer to said question.

The court erred upon the trial of this cause in sustaining plaintiff's exception to the following part of the official report of Henry C. S. Smith, made to J. C. Cummings, special agent of the Treasury Department of the United States of America, to wit: "She (plaintiff) admitted bringing one trunk full of china through the port of Galveston about three years ago free of duty, and disposed of that here," because this part of said report was offered for the special purpose of showing the official proceedings had in said proceeding of the United States against plaintiff, and for the further special purpose of showing that the said article complained of as libelous was merely a fair and reasonable comment upon a matter of public concern for general information, and was therefore privileged.

*John Sehorn* and *R. U. Culberson*, for appellee.

NEILL, Associate Justice.—This suit was brought by the appellee against appellant to recover damages alleged to have accrued to her from the publication in a newspaper of the libelous article concerning plaintiff, hereinafter copied in our conclusions of fact. Plaintiff's petition copies the alleged libelous publication, and avers in the usual form all the essential facts necessary to constitute a cause of action, for the publication in a newspaper of a libel, against the defendant.

The appellant answered by general and special exceptions to plaintiff's petition, a general denial, and specially pleaded that the alleged libelous article, if published, was in good faith and in the honest belief that it was a true, fair and impartial account of the official proceedings of the United States, through its officers of law, in an attempt to collect lawful duty and revenue upon the goods imported and brought into this country by the appellee, which proceedings were authorized by law and had under color and by virtue of their official position. That there were just and reasonable grounds and probable cause for believing that the alleged article was a fair, true and impartial account of said official proceedings, and that the publication was made only after due and sufficient inquiry as to the matters mentioned in the article and of the acts of the officers engaged in an investigation and prosecution concerning the importation of the goods therein mentioned; and that the article and matters complained of were reasonable and fair comments upon a matter of public concern, and were published by it for general information.

The trial of the case resulted in a verdict and judgment in favor of plaintiff for $2,500.

*Conclusions of fact.*—The undisputed evidence shows that the defendant, on the 11th day of February, 1906, was engaged in the publication of a newspaper in the city of San Antonio, Texas, called "The San Antonio Light," and that on said day the defendant maliciously published and distributed in the city of San Antonio, Texas, an issue of said newspaper containing the following libelous article of and concerning the plaintiff:

"SMUGGLED GOODS ARE SEIZED BY THE CUSTOMS
OFFICERS.

"NEARLY TWO THOUSAND DOLLARS' WORTH OF BRIC-A-BRAC
CONFISCATED—GOODS CAME FROM EUROPE.

"Seized Merchandise Said to Have Been Smuggled Through
Port of Galveston, and an Investigation will Be Made.

"SEVERAL OFFICIAL HEADS MAY FALL.

"What has proved the largest seizure of smuggled goods that has
occurred in San Antonio in fifteen years, involving the identity of one
of the best-known ladies of this city, came to light yesterday when Cus-
toms Inspector C. M. Ferguson disclosed $1,870 worth of miscellaneous
bric-a-brac, in his office, confiscated from Mrs. Dora C. Lewy, widow of
the late Augustus Lewy. It is claimed that the seized merchandise was
smuggled through the port of Galveston, either with or without the
knowledge of the Galveston authorities. As a result of the disclosure
the Galveston customs service is greatly agitated, and several official
heads will probably fall.

"Hand-painted china and glassware, $1,392; Oriental and Turkish
rugs, $342; hand-made laces, $200; making a grand total of $1,870
worth of European and Eastern bric-a-brac, comprise the list of goods
now in the possession of the United States custom-house authorities at
this port. These articles were seized by the officers nearly seven days
ago, since which time they have been traced from practically their pur-
chasing point to the places where they were at last discovered.

"This seizure is the largest haul of smuggled goods that has been
made in San Antonio in fifteen years. The last great haul was that of
smuggled opals that were seized here after they had passed the customs
inspectors at the port of Brownsville on the Rio Grande. It was cleverly
worked up by the officers, and its history involves quite a bit of detail.

"Several years ago Customs Inspector C. M. Ferguson suspected that
smuggled goods of the nature just seized were brought into this city
and sold to local merchants and private purchasers. While he had his
suspicions, no tangible evidence was discovered, and nothing ·definite
was done. He determined to keep a watch, however, believing that, if
his suspicions were well founded, his watchfulness would bear fruit in
due season.

"ADVERTISEMENT READ.

"Early in January of the current year Mr. Ferguson read an adver-
tisement in a local paper saying that fine hand-painted china was for
sale by a certain party in the city, who also had established a studio
where reproductions of the work would be taught. Believing he
knew who the lady was who° had thus inserted the advertisement,
"(Continued on page seven.)

## "SMUGGLED GOODS ARE SEIZED BY THE CUSTOMS OFFICIALS.

"(Continued from page one.)

"and not wishing to excite undue suspicion, Mr. Ferguson called in the assistance of Special Treasury Agent H. C. Smith to help in the work of finding out whether the advertised goods were smuggled or not.

"In a Commerce street jewelry store window the officers observed some of the chinaware displayed for sale, to which was attached a card that more of the same character of goods might be seen in a certain studio in the Riverside Building. To the Riverside Building the officers wended their way, and into the studio Mr. Smith ushered himself.

"'Did he wish to see the goods?' inquired the lady in charge, very politely.

"'To be sure, madam; my wife is quite an artist herself, and this afternoon I shall bring her here to see if she would not like to make a few purchases.'

"It happened that Special Agent Smith had his wife with him while in the city, and, by prearrangement, she accompanied her husband to the studio the following day to make a thorough examination of the imported merchandise. Representing themselves as tourists from the north, the pair presented themselves at the studio.

"'This display is perfectly exquisite,' exclaimed Mrs. Smith to the owner of the property. 'You have these plates marked at from $25 to $35 apiece. They are well worth that amount. If I had them back home I could easily get from $75 to $100 apiece for them. Those rugs which you price to me at $150 I could sell for $300 in my native city.'

"'Suppose we buy the entire lot, take them back home and sell them again,' interposed Mr. Smith to his wife.

"'How perfectly lovely!' cried Mrs. Smith, enraptured.

### "INVESTIGATION COMMENCED.

"A price for the entire lot was accordingly fixed, and arrangements were perfected whereby the husband was to return on the morrow to make a payment and take his purchase. This delay was merely a play for time, in order that every step about to be taken might be certain, sure and legal. Mr. Smith was in daily consultation with Mr. Ferguson during the procedure, in addition to which other government authorities were at work along other lines. Telephonic communication was had with Galveston, Baltimore, Washington City, Chicago and several European points. It was discovered, in the course of the investigation, that Mrs. Dora C. Lewy, widow of Augustus Lewy, prominently known in San Antonio, left the port of Galveston on the steamer Frankfort on the afternoon of June 6, 1905. When she left Galveston, it was ascertained, she had three pieces of baggage; when she returned she carried eight pieces.

"It was further learned that Mrs. Lewy had three daughters who had either finished or were completing their art education in Germany, and that it had been her custom for several years to make trips to that country. Mr. Ferguson further learned that Mrs. Lewy had been accus-

tomed to bringing back with her from these European journeys much valuable bric-a-brac of the European and Oriental type.

"Two and two were put together, and, apparently, the result was four.

## "ASTONISHING REVELATION.

" 'Well, I am here to get the goods,' announced Mr. Smith on the appointed day, to the lady owner of the bric-a-brac, 'but before I hand you the money I would like to have the customs-house receipts for them. A mere matter of business, you know.'

" 'Why, the receipts are unnecessary,' replied the lady.    'Just take the goods along with you, and the receipts will be all right.'

" 'But the receipts—I must have the receipts.   I could never think of taking this stuff back North unless I had the proper customs-house papers,' declared the prospective purchaser.

" 'Well, to tell you the truth, I have no receipts.   The customs inspectors passed the articles through the port of Galveston free of duty.'

" 'Then, madam, I must seize these goods and convey them to the office of the local customs officer, Mr. C. M. Ferguson.   I am a special agent of the government, and there are men below with a dray ready to come after them.'

" 'Oh, my goodness!' exclaimed the lady, 'What have I done?'

" 'Nothing, madam, except these goods must be confiscated by the government, and an explanation made how they were brought through the Galveston customs house without any tribute being levied against them,' replied Mr. Smith very deliberately.

## "GOODS SEIZED.

"Forthwith the outfit was carted to the Federal Building, where an appraisement was made as to their value.   There the goods will stay until further disposition of them is made by the Federal authorities. By her own confession Mrs. Lewy, for it was none other than she who brought them with her across the water, has surrendered her ownership of the rugs, laces and china to the United States Government.

" 'Our duty as customs officers cease when we have seized goods and made out our case,' said Customs Inspector Ferguson last night.   'Mrs. Lewy has acted perfectly fair about this matter through the entire investigation, has helped us recover the goods she had already sold, and I have no mind to make further prosecution.   If criminal action is taken against the lady it will have to be taken by the United States District Attorney and the Treasurer at Washington City.   I have performed my duty in apprehending smuggled merchandise, have seized the goods, and proved that the goods thus seized were smuggled.   That completes my action in the premises.'

## "RESPONSIBILITY FIXED.

"An investigation is now being made concerning the identity of the particular inspector who made the final examination of the merchandise at the time Mrs. Lewy entered Texas through the port of Galves-

ton. The idea of bribery is indignantly spurned by the principals involved, and it is presumed that the investigation will result in the discharge of the inspector who 'grossly neglected' his duty in not making a closer and more thorough examination of the imported bric-a-brac.

"The Galveston customs service is greatly agitated over the disclosure, and it is not unlikely that several heads will fall by reason of the vigilance and merciless activity manifested by the San Antonio customs inspector."

Copies of said paper, containing said libelous publication, were sold, distributed and put in the hands of a number of citizens of the city of San Antonio, and the libelous article therein published was read by them.

The evidence is reasonably sufficient to show that the article so published by the defendant, taken as a whole, tended to impeach the honesty, integrity and good name of the plaintiff, and that the same, or at least part thereof, constituted a libel as against the plaintiff, it not being a fair, true and impartial account of any official proceedings authorized by law in the administration of the law, nor a reasonable and fair comment or criticism of the official acts of public officials, or of other matters of public concern published for general information. That by reason of defendant's publishing and distributing said libelous article the plaintiff was damaged in the amount found by the jury.

*Conclusions of law.*—1. The plaintiff's petition was not obnoxious to the general demurrer. It alleges the essential ingredients of a libel as defined by statute, and embraces word for word the newspaper report alleged to be libelous. It is not necessary for the pleader to anticipate and avoid that which, if pleaded and proved, would defeat the plaintiff's action. Townes on Pleading, 272.

2. That portion of the petition assailed by defendant's special exception referred to in the second assignment of error, is such as has been used for ages to charge malice in declarations of slander and libel, and has always been taken as an allegation of fact rather than as a conclusion of the pleader. Though the fact of malice may be inferred or deduced from other matters pleaded, the rules of good pleading require a specific allegation, in appropriate language, of such fact; and that employed in the petition is so generally used in alleging malice in actions of this character that it may be regarded as stereotyped.

3. What is said in disposing of the second assignment likewise disposes of the first proposition under the third, which simply repeats the objection to the same part of the petition. In regard to the second proposition, it is enough to say that it was not essential to aver that the alleged libelous publication exposed, or tended to expose, the plaintiff to financial injury. Damages, which are necessarily pecuniary, follow as a matter of law unprivileged libelous utterances. If the publication tended to injure plaintiff's reputation, and thereby expose her to public hatred, contempt or ridicule, or to impeach her honesty, integrity or reputation, unless it was privileged, as alleged in the petition, it was no more necessary to aver that it tended to her financial injury than to allege that it tended to impeach her virtue. For it is not necessary to aver all the injurious or pernicious tendencies, enumerated in the statute, of a publication, in order to state a cause of action. A newspaper

report which has any of such injurious or pernicious tendencies is actionable.

4. Nor was it essential for the plaintiff to charge in her petition "that said publication tended to expose her to, or that it did expose her to, public hatred, contempt and disgrace among her neighbors and all good citizens of this State, and cause it to be suspected and believed by those neighbors and citizens that she had been guilty of the crime of smuggling. and bribery of the customs officers of the United States," as is contended by appellant in the fourth assignment of error. This is too obvious to admit of discussion.

5. This assignment of error complains of the court's overruling defendant's special exception to a certain innuendo following the third paragraph of plaintiff's petition. In disposing of this assignment we deem it only necessary to make this quotation: "The defendant is in no way embarrassed by the presence of the innuendo in the statement of the claim; in fact, it is to him an advantage. He can either deny that he spoke the words, or he can admit that he spoke them, but deny. that they conveyed that meaning. He can also plead that the words were true, either with or without the alleged meaning. It will then be for the jury to say from the proofs whether the plaintiff's innuendo is sustained. If not, the plaintiff may fall back upon the words themselves, and urge that, taken in their natural and obvious significance, they are actionable in themselves without the alleged meaning, and that, therefore, his unproved innuendo may be rejected as surplusage." Newell on Slander and Libel, p. 628, sec. 38. See, also, Odgers on L. & S., 101; Townshend on S. & L., sec. 336.

6. The principle of law quoted in disposing of the fifth assignment is alike applicable to the sixth, and demonstrates the correctness of the court's ruling upon the exception to plaintiff's petition which is complained of.

7. It was not necessary to aver the nature, character or extent of the mental suffering caused her by the publication of the libelous article. It would baffle the powers of the most skilled anatomist to describe or measure one's mental suffering. He may "minister to a mind diseased," but an accurate description or measurement of mental suffering is "past all surgery." Indeed, it was not at all necessary for the plaintiff to allege that she suffered any agony on account of the libelous publication. It was enough for her to aver the damages she sustained by reason thereof, for upon the mere proof of the libel the jury could give such substantial damages as would compensate her for the defamation.

8. The allegation: "The defendant published and caused to be published of and concerning plaintiff the aforesaid libelous article recklessly and willfully, without having made any proper and sufficient investigation of the truth of the charges contained," is not obnoxious to the objection urged by exception to the petition, that it "states the mere opinion and conclusion of the pleader, and does not charge or aver any facts showing that the article was recklessly and willfully made and published." To have stated the facts showing the animus of the defendant in making the publication would have been to allege the evidence by which the fact that the defendant published the article recklessly and willfully could be proved. The rules of pleading do not require, but

condemn, pleading the evidence which a party relies upon to prove his allegations.

9.   The court in its charge defined a libel as follows: "A libel is a defamation, expressed in printing, tending to injure the reputation of one who is alive, and thereby expose him to public hatred, contempt or ridicule, or financial injury, or to impeach the honesty, integrity or reputation of anyone." The objection assigned to it is, that it "was calculated to, and did, lead the jury to believe that plaintiff had suffered financial injury, when   .  .  .   no such issue was before the jury, in that there was no sufficient pleading and proof to establish such an issue." The proposition advanced is: "The court, in defining libel, should have limited the definition to the character of the libel made by the case on trial, and not include therein an element of damage, positively excluded by the special charge of appellant, given by the court." Abstractly speaking, it was improper to include in the definition of libel a matter neither alleged nor proved; and if such inclusion could have prejudiced the defendant it might afford reasonable ground of complaint. But, as the third paragraph of the court's charge only submitted to the finding of the jury such matters contained in its definition of libel as were pleaded and proved, and the court having, at appellant's request, instructed the jury that, "in estimating plaintiff's damages, if any, they should not consider any financial injury suffered by her," we can not perceive how it was possible for the defendant to have been prejudiced by the definition of libel contained in the charge. For it is clear that, if the jury regarded the evidence and special charge referred to, financial injury to plaintiff did not enter into the verdict, and was necessarily excluded therefrom.

10.   The subject of this assignment is the second paragraph of the charge, which is as follows:

"If you find from a preponderance of the evidence that the article complained of by plaintiff in her petition, and set forth therein, and as published by the defendant, is libelous, as above defined; or if you believe from the evidence that certain parts of said article are susceptible of the meaning or innuendoes placed thereon by the plaintiff, and as set out in her petition, and that such innuendoes are legitimate inferences from the words composing such parts of said article, and that such parts of said article with the innuendoes set out by the plaintiff in her petition are libelous; and if you believe from the evidence that the plaintiff is the person referred to in said article, or in the innuendoes placed thereon to certain parts of said article by plaintiff, then you are instructed to return a verdict for the plaintiff, unless you find for the defendant under instructions hereafter given you."

The objections urged are: (1) That it assumes the alleged libelous article was published by the defendant, is upon the weight of the evidence, and gives undue prominence to claim of plaintiff that the article is libelous; (2) that, in again referring to the definition of libel, before given in the charge, it induced the jury to believe the plaintiff was entitled to recover for financial injury, though the court had directed the jury that such an issue was not before them. In answer to the first objection it is sufficient to say that the undisputed testimony shows the alleged libelous article was published, as alleged by plaintiff,

in "The San Antonio Sunday Light," on February 11, 1906, and that the San Antonio Light Publishing Company owned and published said paper at that time. This evidence being undisputed, the court had the right to assume as a fact that the article was published by the defendant, the evidence raising no issue as to such fact. What we have said in disposing of the ninth assignment of error is applicable to the second objection, and requires that it be overruled.

11. This assignment complains of the third paragraph of the charge, which is as follows:

"If you believe from the evidence that the article published in the defendant's newspaper of date February 11, 1906, was calculated to expose the plaintiff to public hatred, contempt or ridicule, or to impeach the honesty, integrity and good name of the plaintiff, then you will return a verdict for the plaintiff regardless of whether you believe said article was true or false. But the defense of privilege, when made out, is a perfect defense to an action for libel; so that if, in this case, you believe that the government, through its officers, was engaged in an official proceeding for the purpose of forfeiting the goods brought into this country by the plaintiff for nonpayment of duty, and the defendant, through its servants, was informed of such proceeding, and published the article complained of, and that the said article is a true, fair and impartial account of such official proceeding, then you will find for the defendant."

The objection that it unduly emphasizes an issue, and is upon the weight of the evidence, was considered and disposed of in passing upon the two last preceding assignments.

The other, covered by the proposition, "The truthfulness of a publication is a perfect defense to a libel suit," has no application to the case, as it is presented by the record. While the truth of the matter published is, and has always been, a complete defense to an action of libel, yet it must be pleaded by the defendant in order for it to be available. (Cranfill v. Hayden, 97 Texas, 565; Townshend on Slander, secs. 211, 354, 409; Newell on S. & L., 658.) The Act of March 26, 1901, which declares that "The truth of the statement in such publication shall be a defense of such an action," is simply an enunciation of the common law as it theretofore existed, and does not abrogate or affect the rule requiring such defense to be specially pleaded in order that it may be proved. Therefore the defendant, not having pleaded the truth of the matters contained in the publication, can not complain of the charge by reason of its omission of such an issue.

The phrase "good name," as used in the charge, can mean nothing else than reputation, and has always been so regarded, which is illustrated by this quotation: "Good name in man or woman . . . is the immediate jewel of their souls. . . . He that filches from me my good name robs me of that which not enriches him, and makes me poor indeed."

12. The twelfth assignment of error assails the fourth paragraph of the charge which is as follows:

"If you find for the plaintiff, then you should award her such compensatory damages as would ordinarily and probably result from the

article as published, and in estimating her damages, if any, you may consider plaintiff's mental suffering, if any, caused by the publication of said article, but you can not allow her any exemplary damages."

This part of the charge did not of itself, nor when taken with the entire charge (including the special instruction given at defendant's request), authorize a recovery for financial loss. On the measure of damages, it is in perfect harmony with other decisions of the courts in similar cases. (Belo & Co. v. Fuller, 84 Texas, 453; Forke v. Homann, 14 Texas Civ. App., 670; Rosenbaum v. Roche, 101 S. W., 1164.) The Act of 1901 does not undertake to state the elements of damages in a civil action for a libelous publication in a newspaper, but leaves the measure of damages, save as to certain matters which it provides may be pleaded and proved in mitigation, as it was before the enactment.

13. This assignment complains of the court's refusing this special charge: "If in the article complained of as libelous you find any comments or statements of matters of public concern that are libelous, yet if they are made by defendant upon probable cause, and the defendant published the same for general information, then as to such matters you will find for the defendant," requested by defendant. This charge was evidently asked in view of subdivision 4, section 3 of the Act of 1901, which privileges "A reasonable and fair criticism of official acts of public officials, and of other matters of public concern published for general information." This relates solely to *comment* or *criticism* of official acts and matters of *public concern*. "Probable cause" for making the comment or criticism is not even a factor to be considered in determining whether it is privileged or not. If comment or criticism of such acts and matters is made and published, and it is libelous, the privilege of immunity from the consequences of the publication is not extended by the statute, unless it be shown such comment and criticism is reasonable and fair.

Besides, if it should be conceded that the construction of the statute, as contended for by appellant's counsel, is correct, the charge was properly refused. For it will be noticed from the article that the comment or criticism is not confined to plaintiff, but extends to the customs officers of the government at Galveston. If, then, there were probable cause for the comment or criticism of such officers, although there should be none for the plaintiff, the jury under the requested charge would be required to find for the defendant.

14. The proposition by appellant, under this assignment, that, under the laws of the United States, their agent in the custom service is authorized to enter one's house, search for and seize property without a warrant, if he have reasonable cause to suspect it has been imported contrary to law, is astonishing to anyone who has any knowledge of the Constitution, laws, history and genius of our government. Article IV, Amend. Constitution U. S., section 3066 Revised Statutes U. S.; Boyd v. United States, 116 U. S., 616; 29 L. Ed., 746. Almost as startling is appellant's effort to prove the laws of the United States by the testimony of the officer who made the unwarranted search and seizure. The courts of the several States take judicial knowledge of the laws of the Federal Government, and no principle of evidence permits them to sub-

stitute the testimony of any of its officers, even though he be a revenue agent, for such knowledge.

But, if it were possible to conceive that the law regarding the authority of an officer in the customs service is as contended for in the assignment, we would be unable to perceive its applicability. The comment and criticism is not upon the revenue officer or his acts. He is made the hero of the story. The public is led to believe from the article that his acts are praiseworthy, and in accordance with law, and that he is a "marvelous proper man." It is the widow to whom the chivalric reporter, by his comment and criticism, pays the humble tribute of his respects, in the display of his knowledge of the "value of addition, division," if not of *"silence"* (which he foregoes in order to avail his paper of the "scoop" he has made on the other newspapers of the city), for the purpose of demonstrating that she has been guilty of smuggling, and, perhaps, of bribing the government's customs officers at the port of Galveston, which is not "a reasonable or fair criticism of official acts of public officials."

15. The special charge, the refusal of which is the subject of this assignment, omits the issue of actual malice made by the pleadings and evidence, and authorizes a finding for defendant upon the finding of certain facts, without regard to whether the publication was made by it with actual malice. Proof of actual malice on the part of the publisher of a libelous article prevents the publication from being privileged. The law does not permit a publisher to glut his malice against a citizen by publishing matter which, in the absence of actual malice, would be privileged. Besides, as shown in considering a prior assignment, the comments published are not upon "official proceedings," but upon the supposed acts of a private citizen.

16. This assignment complains of the refusal of the following charge: "If, in construing the article complained of as libelous, you find comments upon said official proceedings, if any, which were not fair, true and impartial statements of said proceedings, you may find such matter or matters of comment privileged, provided they were reasonable and fair comments upon matters of public concern, and published by the defendant for general information, and in this event you will find for the defendant upon any such comments." This charge would make comments on official proceedings, which are neither true, fair nor impartial, privileged, provided they are upon matters of public concern and published for general information. We are not able to perceive how comments upon official proceedings, which are untrue and unfair, can become reasonable and fair by reason of the official proceedings being matters of public concern. Official proceedings, though they may relate to matters of public concern, must be viewed as official proceedings; and if newspaper comments upon them are not fair, true and impartial, they can not under the law be deemed privileged. If, as applied to official proceedings, the comments are untrue, they must necessarily be untrue as to the same proceedings when viewed as matters of public concern.

17. This assignment complains of the refusal of the following charge: "If you believe that any of the matters of comment in the article complained of are libelous, still, if they were reasonable and fair inferences in reference to matters of public concern, and published in good faith,

and upon probable cause, for the general information, then you will find that such inferences were privileged, and that the plaintiff is not entitled to recover therefor." What we have said in considering previous assignments we deem a sufficient demonstration of the fallacy of the requested instruction. We will only add that probable cause for believing the truth of matters contained in a libelous article, while it may mitigate the damages, does not justify its publication.

18. The defendant, having failed to plead the truth of any matter contained in the libelous article, was not entitled to have the question as to whether the plaintiff was guilty of the offense of smuggling determined. Therefore the court did not err in refusing the special charge presenting such an issue. Even if such an issue had been presented, the charge should not have been given, for it omits an essential ingredient of the offense.

19. The same may be said of the special charge, the refusal of which is the subject of this assignment. In order to constitute the offense of smuggling there must be clandestine introduction of goods subject to duty with the intent to defraud the government. These essential ingredients of the offense were not included in the requested charge.

20. The quotation we made from Newell, on Slander and Libel, in disposing of the fifth assignment of error, demonstrates that the requested charge, made the subject of this one, was properly refused.

21. This assignment of error complains of the refusal of the defendant's request to give this special charge: "In determining the existence of probable cause as to any of the issues in which the existence of probable cause is submitted to you, you may look to, and may inquire whether, plaintiff was guilty of smuggling in bringing into this country, without the payment of duty, any of the articles brought by her." It is enough to say that, as the trial court did not submit in the main charge, or in any charge requested by defendant, any question of "probable cause" for the publication of the libelous article, there was nothing to which this instruction could relate; and that, therefore, it was properly refused.

22. As mental suffering on the part of the person defamed is one of the direct results of the publication of libelous matter, and in an action for libel the plaintiff may recover compensation therefor (2 Sedg. on Dam., sec. 443; 4 Suth. on Dam., sec. 1206; Newell on S. & L., 863-4, sec. 35), the court did not err in refusing defendant's request to instruct the jury that they could not consider or allow plaintiff any damages for mental anguish.

23. The defendant itself introduced in evidence the judgment of the Federal District Court in the proceedings to forfeit and confiscate the goods, or some of them, referred to in the libelous article, which was against the United States. It is not shown by the record for what purpose such judgment was introduced as evidence. The defendant here complains of the refusal of the court to instruct the jury, at its request, that such judgment should have no influence upon them in their deliberations upon the issues submitted to them. The purpose of the charge was to relieve the defendant from what might be the effect of evidence it introduced on its own account. It might as well predicate error upon the plaintiff's permitting it to be introduced without objection as to complain that the court erred in failing to relieve it from the conse-

quences of its own error.   One may not deliberately, in the trial of a case, do an erroneous act which may be prejudicial to him, and obtain a reversal of the judgment because the trial court refused his request to give a charge which would nullify the effect of such action on his part.   If this were permissible, counsel for a party might exhaust his ingenuity in conjuring up and introducing irrelevant evidence for the purpose of obtaining a reversal of a judgment against his client because the trial court refused his request to charge the jury to disregard it.

24.   There was no error in the refusal of defendant's request to charge the jury that it was not required to prove its defense of privilege literally, and that such defense is made out if proven in substance and fact.   The charge of the court upon the issue of privilege is in the language of the statute, which clearly defines and enumerates such libelous matter as it makes privileged, and the court could add nothing to nor subtract anything from the law, but it was for the jury to say whether, under the statute and from the evidence before them, the matter contained in the publication was privileged.

25.   Special charge No. 15, requested by defendant, was properly refused.   There is no language in the article so limiting and qualifying its meaning as to make it not libelous when taken as a whole.   Its meaning is too clear to admit of any doubt upon this point.   The only possible question concerning it is, was it privileged?

26.   The special charge made the subject of this assignment is given in substance in the main charge, and for that reason there was no error in its refusal.

27.   The special charge referred to in this assignment was properly refused for the reasons stated in our consideration of the thirteenth and fourteenth assignments of error.

28.   We can perceive no error in the refusal of the court to instruct the jury to disregard the remarks made in argument by plaintiff's counsel, referred to in this assignment.   They seem to us to have been proper and in legitimate argument, upon evidence before the jury upon the issue of damages.

29.   The defendant having failed to plead as a matter of defense that the plaintiff was guilty of smuggling, there was, as we have intimated in disposing of another assignment, no issue in regard to her being guilty of such offense.   Therefore the court properly refused to submit such issue as requested by defendant in the special charge referred to in this assignment.

30.   The testimony referred to by us in disposing of the tenth assignment of error was amply sufficient to authorize the admission in evidence of a copy of the San Antonio Sunday Light of February 11, 1906, over appellant's objection that there was no evidence that defendant published and circulated said newspaper.   Therefore we overrule the thirtieth, as well as the thirty-first assignments of error.

31.   The testimony of the witness Smith, referred to in the thirty-second assignment of error, was clearly hearsay, and irrelevant to any issue in the case, and for these reasons was properly excluded.

32.   The question asked the witness, Smith, by defendant's counsel, was obviously improper, in that it sought to elicit the conclusion arrived at by the witness from a conversation he had with the plaintiff; and the

court did not err in sustaining plaintiff's objections to it, as is complained in the thirty-third assignment.

33.   As the report of Smith to Cummings is not mentioned nor commented on in the libelous article, even if it should be deemed "official proceedings" within the meaning of the statute, we fail to perceive its relevancy as evidence in this case.   Certainly it was inadmissible as evidence of the facts stated in it, for as to such matters it was purely hearsay.   Therefore we overrule the thirty-fourth, thirty-fifth and thirty-sixth assignments.

34.   There is no merit in the thirty-seventh, thirty-eighth, thirty-ninth nor fortieth assignments of error, and all are overruled.

There is no error in the judgment and it is affirmed.

*Affirmed.*

Writ of error refused.