BALDACCHI et al. v. GOODLET, Notary Public, et al. †

(Court of Civil Appeals of Texas. Galveston. Feb. 14, 1912. Rehearing Denied March 14, 1912.)

1. INTOXICATING LIQUORS (§ 106*) — "LICENSE."

A "license" to sell intoxicating liquor is a mere permit, and not a vested property or contract right, and the state may, in the exercise of its police power, revoke it, though it may be sold or mortgaged, and is subject to execution.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 113, 115; Dec. Dig. § 106.*

For other definitions, see Words and Phrases, vol. 5, pp. 4133–4141; vol. 8, p. 7706.]

2. INTOXICATING LIQUORS (§ 108*)—REVOCATION OF LIQUOR LICENSE—PROCEEDINGS—"JUDICIAL ACT"—"FORFEITURE"—"PENALTY"—"SUIT FOR FORFEITURE OR PENALTY."

A proceeding, authorized by Acts 31st Leg. c. 17, §§ 9a, 9b, 9c, 9f, 9g, for the revocation by the Comptroller of Public Accounts of liquor licenses for violations of the law by liquor dealers is not a suit by the state for a "forfeiture" or "penalty," within Const. art. 5, § 8, conferring on the district court exclusive jurisdiction of such suits; for, though an official act may be judicial as involving the exercise of discretion and judgment, yet, when

discretion is conferred on an executive officer in the discharge of administrative or executive duties, the acts of the officer are not judicial.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 116–118; Dec. Dig. § 108.*

For other definitions, see Words and Phrases, vol. 3, pp. 2893–2899; vol. 8, p. 7665; vol. 4, pp. 3848–3853; vol. 8, p. 7697; vol. 6, pp. 5272–5276; vol. 8, p. 7750; vol. 7, p. 6779.]

3. INTOXICATING LIQUORS (§ 106*)—REVOCATION—CONSTITUTIONAL RIGHTS.

One procuring a liquor license accepts it charged with notice of the right of the state to revoke it when, in the judgment of the Legislature, the best interests of society demand a revocation; and he cannot be heard to say, when the state seeks to exercise its right of revocation, that his constitutional rights are invaded.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 113, 115; Dec. Dig. § 106.*]

4. CONSTITUTIONAL LAW (§ 75*)—INTOXICATING LIQUORS (§ 15*)—DELEGATION OF JUDICIAL POWER—STATUTES.

A proceeding for the revocation of a liquor license, under Acts 31st Leg. c. 17, §§ 9a, 9b, 9c, 9f, 9g, authorizing the Comptroller of Public Accounts to revoke liquor licenses for violations of the law by licensees, is ministerial, not involving the guilt or innocence of the licensee, except as incidental to the ascertainment of the facts authorizing a revocation; and the statute is not violative of Const. art. 1, § 2, as delegating power which may be exercised only by the judiciary.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 138; Dec. Dig. § 75;* Intoxicating Liquors, Cent. Dig. §§ 17, 18; Dec. Dig. § 15.*]

5. INTOXICATING LIQUORS (§ 108*)—REVOCATION OF LICENSE—HEARING—NOTICE.

The Legislature may revoke a liquor license without a hearing and may delegate the power to do so to any governmental agency; and a liquor dealer whose license is revoked may not complain of any want of fullness in the procedure provided by the statute.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 116–118; Dec. Dig. § 108.*]

6. INTOXICATING LIQUORS (§ 108*)—REVOCATION OF LICENSE—NOTICE.

Under Acts 31st Leg. c. 17, §§ 9a, 9b, 9c, 9f, 9g, providing for the revocation of liquor licenses and for notice to the licensee of the time and place where the investigation will be conducted, a five-day notice of the time and place of investigation is sufficient.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 116–118; Dec. Dig. § 108.*]

7. INTOXICATING LIQUORS (§ 108*)—REVOCATION OF LIQUOR LICENSE—DISQUALIFICATION OF ADMINISTRATIVE OFFICER.

The Comptroller of Public Accounts is not disqualified from proceeding, under Acts 31st Leg. c. 17, §§ 9a, 9b, 9c, 9f, 9g, for the revocation of a liquor license, merely because he has expressed an opinion by publicly declaring that on the receipt of depositions to be taken he will forfeit the license, especially where he states that he will decide the question according to the preponderance of the credible testimony adduced on the hearing.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 116–118; Dec. Dig. § 108.*]

---

8. CONSTITUTIONAL LAW (§ 70*)—JUDICIAL QUESTIONS—WISDOM OF LEGISLATIVE ACT.
The court will not pass on the expediency or wisdom of a constitutional statute.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 129–132, 137; Dec. Dig. § 70.*]

Appeal from District Court, Galveston County; Clay S. Briggs, Judge.

Action by A. Baldacchi and others against J. W. Goodlet, Notary Public, and another. From a judgment for defendants, plaintiffs appeal. Affirmed.

D. D. McDonald, Marsene Johnson, and Clough & Fuller, for appellants. Jewel P. Lightfoot, Jno. W. Brady, and C. E. Mead, for appellees.

PLEASANTS, C. J. This is a suit for an injunction, brought by appellants A. Baldacchi and 36 others against J. W. Goodlet, a notary public for Galveston county, and W. P. Lane, Comptroller of Public Accounts for the state of Texas.

The appellants are retail liquor dealers residing and doing business in the city of Galveston. The injunction is sought for the purpose of restraining the defendants from proceeding to take depositions of witnesses upon a complaint made to the Comptroller, charging each of appellants with conducting his said business on Sunday, in violation of the law under which his license was issued, and restraining the Comptroller from any attempted forfeiture of appellants' licenses as liquor dealers because of said alleged violations of the law.

The facts alleged in the petition and established by the evidence adduced on the hearing are as follows: Each of the plaintiffs is a licensed retail liquor dealer, and is carrying on the business of a retail liquor dealer in the city of Galveston. The defendant W. P. Lane, who is Comptroller of Public Accounts for the state of Texas, upon a complaint made to him, charging each of the plaintiffs with a violation of the law requiring the closing of his place of business on Sunday, had issued commissions to the defendant J. W. Goodlet, a notary public of Galveston county, to take the depositions of witnesses upon said complaints. Upon the receipt of these commissions, the defendant Goodlet, on October 17, 1911, issued a notice to each of the plaintiffs that he would, on October 23, 1911, proceed under these commissions to examine witnesses and take their depositions in reference to the charge against plaintiffs before mentioned. These notices were received by plaintiffs on October 18th. No other notices were issued to plaintiffs, and none of them made appearance before the notary, or waived the issuance of further notice. When the complaints were made to the Comptroller, he did not request the state revenue agent to make any investigation thereof, but sent several of the employés in his office to Galveston to make such investigation, and, acting upon the report of said employés that the law had been violated by plaintiffs making sales of liquor at their places of business on Sunday, he issued the commissions, as before stated. It is further alleged that the Comptroller had prejudged the cases, and had publicly declared that upon receipt of the depositions to be taken by the defendant Goodlet he would forfeit the license of each of the plaintiffs; that because of said declaration and the interest and activity shown by him in procuring testimony and prosecuting the complaints against plaintiffs the Comptroller is disqualified to pass upon the testimony that may be adduced upon the proposed hearing, and to decide the question of whether plaintiffs' licenses should be forfeited. The provisions of the statute under which the proceedings complained of were instituted are attacked as invalid and unconstitutional upon grounds which will be hereafter indicated. It is further alleged that, unless restrained by an order of court, the defendant Goodlet will proceed, on October 23, 1911, to take testimony under said commissions, and will transcribe and return the same to defendant Lane, who will, as soon as said depositions are received by him, declare plaintiffs' licenses forfeited; that plaintiffs have no adequate remedy at law; and that the damage that would be caused them by such wrongful and illegal forfeiture of their licenses would be irreparable. The prayer of the petition is that a temporary order be issued, restraining the defendants from further proceeding in the matter of taking said depositions, or doing any act in the prosecution of the complaints against plaintiff, and that upon a final hearing said defendants be perpetually enjoined and restrained from taking said testimony and prosecuting said complaints.

Upon presentation of this petition to Hon. Clay Stone Briggs, judge for the Tenth judicial district, a temporary restraining order was granted and issued on October 23, 1911. Upon a hearing on October 30, 1911, on the petition and answer of defendants and the affidavits and testimony of witnesses, the court dissolved the restraining order and rendered judgment for the defendants, refusing to grant the injunction.

We will first dispose of appellants' contention that the provisions of the statute under which the proceedings sought to be enjoined were instituted are invalid, because repugnant to the provisions of the Constitution of this state.

The provisions of the statute in question are found in sections 9a, 9b, 9c, 9f, and 9g of the act of the Thirty-First Legislature, regulating the sale of intoxicating liquors, known as the Fitzhugh-Robertson Law, and

being chapter 17, p. 293, of the Acts of the Thirty-First Legislature.

Section 9a of this act provides, in substance, that if the Comptroller should at any time be advised or receive information that any person to whom a liquor dealer's license has been issued has violated any of the conditions or provisions of the application filed by him with the Comptroller for a permit to apply for such license, as provided in the next preceding section of the act, it shall be the duty of the Comptroller to at once institute an inquiry and ascertain the names and residences of all persons who know and will testify to such violations.

Section 9b provides that upon securing the names of such witnesses it then becomes the duty of the Comptroller, either to notify the county judge of the county in which the alleged violation of the law occurred of such complaint, in order that the same may be investigated by said officer in accordance with the provisions of the act, or to issue a commission, addressed to some officer authorized to take depositions in the county in which the alleged violation of the law occurred, stating the violation of the law charged, and directing such officer to take the depositions of the witnesses named in the commission and of such other persons as may be required or necessary in regard to said charge, and when such depositions are taken to return same to the Comptroller in the manner provided by law for the taking of depositions in civil cases in this state.

By section 9c, it is provided that the officer receiving such commission shall issue a subpœna to the witnesses, commanding them to appear before him and testify on a day named in the subpœna, and have such subpœna served by the proper officer. He is further directed to notify the county attorney of the time and place at which the depositions are to be taken, and request him to be present and interrogate the witnesses, and also to notify "the person or persons who are charged with having conducted such business in violation of law and whose conduct is to be investigated, of the character of the charge and of the time and place where said investigation will be conducted and that he or they shall have the right to appear in person or by attorney and cross-examine said witnesses and if they so desire to testify themselves or to offer the testimony of other witnesses relating to the matter under investigation; and the person whose conduct is to be investigated shall have the right to all proper process to compel the attendance of witnesses whose testimony he may desire."

Section 9f prescribes the manner in which the depositions shall be taken and returned.

Section 9g provides that upon receipt of the deposition by the Comptroller he shall open and proceed to consider the same, and if "he shall determine from a preponderance of the credible evidence therein contained" that the law has been violated by the liquor dealer after the issuance of his license "he shall rescind, vacate and withdraw such license and shall issue a certificate in triplicate under his hand and the seal of said office declaring the rescission of such license theretofore issued to such person or persons, and one copy shall be furnished by the Comptroller by mail to the county judge of the county where the place of business of the person or persons whose license is withdrawn and rescinded is located, and the other copy shall be forwarded by mail to the person or persons whose license has been so rescinded and withdrawn; and it shall be unlawful thereafter for such person or persons to continue such business and any attempt to do so shall subject him or them to the penalty herein provided for pursuing such business without a license; and any person or persons whose license shall be so rescinded or withdrawn shall forfeit to the state, county and city all money paid therefor and shall never have any claim against the state, county or city for any money paid for such license."

[1] Appellants' first contention is 'that these provisions of the statute are unconstitutional, because they attempt to confer upon the Comptroller of Public Accounts the power to forfeit property rights and civil rights, privileges, and immunities which can only be forfeited, under the Constitution, if at all, by a suit in the district court. It is true that a license to sell liquor is property in the sense that it is a thing of value that may be lawfully acquired and held. The act under which the licenses involved in this suit were issued recognizes that a license to sell liquor is property, and expressly provides that it may be sold or mortgaged, and that it is subject to execution. While it has these general attributes of property, it is nevertheless well settled that, as between the state that issues the license and the licensee, it never becomes a vested property right which the state may not revoke whenever, in the exercise of the police power of government, it deems such revocation necessary for the protection or for the benefit of society.

The principle is thus stated in Black on Intoxicating Liquors (sections 128 and 129): "The fact that a person has been licensed to sell intoxicating liquors does not give him a vested right in the continuation of such traffic in such liquors in any sense that it cannot be abridged or abrogated by subsequent legislation, enacted in the exercise of police power, and for the benefit of the interest of society. The license being a mere privilege to carry on the business, subject to the will of the grantor, it is not property in the sense which protects it under the Constitution. * * * A license to sell liquor is neither a contract nor a right of property, within the legal and constitutional

meaning of those terms. It is no more than a temporay permit to do that which would otherwise be unlawful, and forms a part of the internal police system of the state. Hence the authority which grants a license always retains the power to revoke it, either for due cause of forfeiture, or upon a change of policy and legislation in regard to the liquor traffic."

This principle has been uniformly recognized and approved by the decisions of our higher courts. In the case of Rowland v. State, 12 Tex. App. 418, it is held that the right and power of the Legislature by a general law to revoke a license to sell liquor is supported by the weight of authority. In that case, the law under which the defendant's license had been issued was repealed before the expiration of the license, and all liquor dealers were required to take out new licenses and pay an increased occupation tax. If the license issued by the state, which had not expired, had vested a property right or a privilege or immunity in the defendant, in the sense in which these terms are used in our state Constitution (section 19 of Bill of Rights), the Legislature had no authority to revoke the license and require the dealer to take out a new one at an increased tax; and, in order to sustain the law, it was necessary for the court to follow the doctrine above stated, and hold that a liquor dealer's license gives no such right. In the case of Ex parte Vaccarezza, 52 Tex. Cr. R. 112, 105 S. W. 1121, the court says: "It is not necessary to cite authorities on the proposition that a saloon license is a bare permit from the Legislature to sell whisky, which can be revoked at any time in the discretion of the Legislature, even without provision in the repealing statute authorizing a refund of the unearned license. While this would not, perhaps, be common equity and just on the part of the Legislature, still the right to do so has never been seriously questioned in this state." In the cases of Hernandez v. State, 135 S. W. 170, and Lane v. Schultz & Buss, 146 S. W. 1009, recently decided, the Court of Civil Appeals for the Fourth District announced the same doctrine. The right of the Legislature to forfeit a liquor dealer's license or provide for its forfeiture without a judicial ascertainment and decree is, we think, fully established by these decisions.

[2] The proceedings prescribed by the sections of the statute before set out are not judicial, and cannot be regarded as a suit by the state to recover a forfeiture or penalty in the purview of section 8, art. 5, of the Constitution of this state, which confers upon the district court exclusive jurisdiction of such suits. An official act may be judicial in the sense that it involves the exercise of discretion and judgment on the part of the officer charged with its performance, and for that reason a mandamus would not lie to compel its performance; but, when discretion of this kind is conferred upon an executive officer in the discharge of duties that are essentially administrative or executive, the acts of the officer are not judicial, within the meaning of the provisions of the Constitution, which distributes the powers of government among three co-ordinate branches or departments, executive, judicial, and legislative, and prohibits officers in one department from assuming the functions or exercising any power conferred upon a different department. This distinction in the use of the word "judicial," when used to designate the character of official acts, and when applied to one of the co-ordinate departments of government, is pointed out by our Supreme Court in the case of Railway Co. v. Shannon, 100 Tex. 379, 100 S. W. 138, 10 L. R. A. (N. S.) 681. In discussing the contention of the appellant in that case, that the powers conferred by the intangible asset act upon the tax board created by that act were judicial, the court says:

"But it is urged that their powers are judicial in their nature, and that therefore the act is void. We think the argument is based upon a confusion as to the meaning of the word 'judicial.' Article 5 of our Constitution provides for the organization of the judicial department of the government. It prescribes what courts shall be established, and defines their jurisdiction, names the officers of courts, and prescribes their powers, and in every instance, save one, the province of the courts so provided for is to hear and determine causes between parties affecting the right of persons as to their life, liberty, and property. The exception is the commissioners' courts, which are not properly a part of the judicial department. But the whole scope of the article shows clearly what is meant by the judicial department of the government. The word 'judicial' is, however, used not with strict accuracy in another sense. It is applied to the act of an executive officer who, in the exercise of his functions, is required to pass upon facts, and to determine his action by the facts found. This is sometimes called a quasi judicial function. This question came up in the case of Arnold v. State, 71 Tex. 239, 9 S. W. 120, and it was there held that the land board, which was created under the act of 1883, and which was composed of the Governor, the Attorney General, the Comptroller, Treasurer, and Commissioner of the General Land Office, was a lawful body. They were intrusted as a body with the classification, valuation, and sale of the public free school and asylum lands. The duties of the board necessarily required it to inquire into and to determine facts. While the act was held valid, this question we are now discussing was not alluded to in the opinion; but it is not likely that either the court or the very able and careful

judge who spoke for it overlooked the point. The case cited is conclusive of the question here presented."

The Hernandez and the Shultz & Buss Cases, supra, both hold that proceedings to forfeit a liquor dealer's license under this statute are not judicial. The same ruling is made in the Missouri cases of Higgins v. Talty, 157 Mo. 280, 57 S. W. 724, and State v. Seebold, 192 Mo. 720, 91 S. W. 491. Authorities in support of this holding are too numerous to cite.

[3] Such being the character of the right conferred by a license to sell intoxicating liquors, the person who procures such license accepts it charged with notice of the right of the state to revoke it whenever, in the judgment of the Legislature, the best interest of society demands its revocation, and cannot be heard to say, when the state seeks to exercise its right of revocation, that his constitutional rights are invaded.

In addition to this presumed notice of the state's right to revoke such license, under our statute, the liquor dealer, when he makes his application for the license, after expressly promising to comply with all the conditions of his bond, and to refrain from violating any of the statutory provisions regulating the sale of intoxicating liquors, makes and signs the following agreement, under oath: "And it is hereby agreed that if the license to be applied for be issued, that the same will be issued upon condition that it shall remain in force only so long as I (or we) observe and carry out each and all of the declarations herein made, and that in the event I (or we) violate any of the promises or do or perform any one or more of the acts which it is herein declared shall not be done or performed, that either the county judge or the Comptroller of Public Accounts of the state of Texas, in the manner provided in this act, may rescind, cancel and annul the said state and the county license granted in pursuance of this application and that all money paid for such license shall be forfeited to the state and county or city to whom paid; and that I (or we) will at once, upon the cancellation of such license, close up the place where such business is being conducted, and cease to do such business, and will not within five years from that date again, either as owner, agent, representative or employé of any other person attempt to enter into or engage in the retail liquor business, unless the order of the Comptroller cancelling and rescinding such license shall be annulled, in case such licenses shall have been cancelled by the Comptroller."

[4] Appellants further assail the provisions of the statute, before set out, upon the following grounds: "Because the act referred to violates section 2, art. 1, of the Constitution, in that it delegates to the executive officer of the state government a power and authority which should only be exercised by the judiciary, to wit, the adjudging of the guilt or innocence of a person charged with doing an act which constitutes a violation of the criminal law of the state, which judgment is to be rendered upon evidence procured, and upon a rule of law recognized in judicial proceedings only; because the liquor law of this state grants to a licensee the privilege of selling intoxicating liquor unmolested, except by the law of the land, administered under constitutional authority, and subject to constitutional restrictions; and because the forfeiture sought to be enforced in this case is by virtue of an act of the Legislature which would condemn the licensee and forfeit his privileges and immunities without a hearing, and without notice to him to appear and defend, and without opportunity being given him to be present in person or by attorney and make his defenses, if any, at a hearing; because notice, pleadings, appearances, and hearings upon the merits and upon the evidence taken are not provided for by law; because the act is insufficient to authorize a cancellation under any circumstances, for the reason that the proceedings, being outside of the court and summary in their nature, fail to provide proper safeguards for the preservation of the rights of the licensee, and fail to provide proper and necessary rules of pleading, practice, and of evidence, and said act does not provide that the rules of pleading, practice, and evidence, relating to the trial of the causes in the civil courts, shall be adopted; and because the act fails to authorize the Comptroller of Public Accounts to make his own rules of pleading, practice, and of evidence for the governing of proceedings in revocation cases before him."

From the views before expressed as to the essential character of a liquor dealer's license, and of the character of the proceedings prescribed by the statute for the revocation of such license, it follows that none of these objections urged by appellants to this statute can be sustained. The proceeding being ministerial, there is no adjudication of the guilt or innocence of the liquor dealer in any judicial sense. The inquiry by the Comptroller into the charge made against the liquor dealer is only for the purpose of determining whether he is authorized to perform the ministerial act of revoking the license; and the question of the guilt or innocence of the dealer is only incidental to the ascertainment of the facts which authorize revocation. This inquiry, as shown by the provision of the statute before quoted, is not made without notice to the dealer and opportunity to him to offer evidence in his own behalf. The proceeding not being judicial, no rules of procedure are required to be provided, such as are necessary in judicial investigation. The proceeding prescribed by the statute is sufficient for the purpose of the investigation the Comptroller is authorized to make.

[5] The Legislature having the power to

revoke the license without a hearing, and to delegate such power to such governmental agency or tribunal as it might select, appellants cannot complain of any want of fullness in the procedure provided by the act. Wallace v. Mayor, 27 Nev. 71, 73 Pac. 528, 63 L. R. A. 337, 103 Am. St. Rep. 747; Commonwealth v. Kinsley, 133 Mass. 578; People v. Board of Commissioners, 59 N. Y. 92.

[6] There is no merit in the further contention of appellants that the proceedings were illegal, because proper notice of the taking of the depositions was not issued and served upon them, as required by the statute. The statute provides that upon the receipt of the commission the notary shall "notify the person or persons who are charged with having conducted such business in violation of the law and whose conduct is to be investigated of the character of the charge and of the time and place where said investigation will be conducted and that he or they shall have the right to appear in person or by attorney and cross-examine the said witnesses, and if they so desire, testify themselves or to offer testimony of other witnesses relating to the matter under investigation." The character and contents of the notice are not otherwise prescribed, and no directions given as to how long such notice should be served before the time set for the investigation, nor by whom it shall be served. Appellants admit that they received a notice of the kind described in the statute on October 18th, which was five days before the date set for the investigation. If the question is one which could be properly raised in this suit, we hold that the notice was sufficient. If appellants required a longer time to prepare themselves for the investigation and to obtain testimony material in their defense of the charges against them, it is not to be presumed that the officer would have refused to allow them sufficient time to properly present their evidence.

[7] The only remaining question which we deem it necessary to discuss is the contention that the injunction should have been granted, because the evidence shows that the Comptroller was disqualified from passing upon the evidence and determining whether appellants' licenses should be revoked. In support of this contention, it was shown that the Comptroller had been very active and earnest in his efforts to discover whether there had been violation of the liquor laws by the Galveston saloon men. That upon receiving reports from his employés, whom he had sent to Galveston for the purpose of ascertaining whether there had been such violation of the law, he had publicly expressed the opinion that there had been such violation, and his determination to revoke the licenses of said violators as soon as he could obtain the necessary legal evidence of such violation. This is the substance of an inter-

view given by the Comptroller to the newspapers just after the commissions to take testimony were forwarded to the notary. He admitted upon the stand that he believed the statements made to him by his employés in regard to violation of the law by the appellants; but he testified that, notwithstanding this, he could and would decide the question of whether the licenses should be revoked according to the preponderance of the credible testimony adduced upon the hearing. We know of no rule by which an administrative officer is disqualified from passing upon facts which authorize him to perform a ministerial act because of his having expressed an opinion upon such facts before he is called to act upon them. Public expression of this kind on the part of such officer is a matter of taste and temperament; and, while there might be a question of propriety involved, there is no question of legal disqualification. It seems such expressions of opinion on the facts would not disqualify a judge, under the rule announced in the cases of King v. Sapp, 66 Tex. 519, 2 S. W. 573, Oil Co. v. Cook, 6 Tex. Civ. App. 573, 26 S. W. 96, Drechsel v. State, 39 S. W. 678, and in a number of cases from other states, cited in appellees' brief; but, be this as it may, we think it clear that it is no disqualification for the legal performance of a ministerial act. This disposes of all the material questions presented by appellants'. brief. We have not discussed the various assignments of error in detail; but all of them have had due consideration, and, in our opinion, none of them should be sustained.

[8] With the expediency or wisdom of a legislative act, the courts have no concern. So long as no constitutional right of the citizen is invaded, the right and powers of the Legislature to enact such laws as they deem best for the public welfare cannot be questioned; and courts cannot, without usurpation of power, nullify any act of the Legislature, unless it is plainly repugnant to some constitutional provision. We do not think the provisions of the statute attacked in this case are violative of any of the provisions of the Constitution. It follows that the judgment of the court below should be affirmed; and it has been so ordered.

Affirmed.