KOEHLER v. DUBOSE et al. (No. 5937.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 2, 1918. On Motion for Rehearing, Jan. 23, 1918.)

1. LIBEL AND SLANDER ☞34 — DEFENSES — PRIVILEGE.

Act 27th Leg. c. 24, relative to libel, defines libel, authorizes the proof of certain matters in mitigation, and provides that the truth shall be a defense, that the publication of a fair, true, and impartial account of proceedings in a court of justice, etc., shall be deemed privileged, and not made the basis of any action for libel without proof of actual malice, and that nothing therein shall be construed to amend or repeal any penal law on the subject of libel, nor to take away any existing defense to a civil action for libel. *Held,* that the statute preserves all existing defenses except in so far as they may be affected by the definition of libel, including the defense of privilege, and does not limit the defense of privilege to newspaper and periodical publishers.

**2. Statutes ⬥220—Construction—Legislative Construction.**

Rev. St. art. 5598, as amended by Acts 35th Leg. c. 206, providing that nothing in that title shall be construed to amend or repeal any penal law on the subject of libel, nor to take away any existing defense to a civil action for libel at common law or otherwise, but that all such defenses are thereby expressly preserved, is not a legislative construction that the prior law deprived defendants of common-law defenses, but was apparently enacted to cure the failure of the codifiers to include a part of the prior law in the Revised Statutes.

**3. Libel and Slander ⬥19—Construction of Language Used—"Frequent."**

Where a petition remonstrating against the granting of a new liquor license to a saloon keeper stated that minors frequented the place, and seemed to experience no difficulty in finding some one who would buy liquor for them, the innuendo that this conveyed the idea that the saloon keeper had been guilty of selling liquor to minors pertinently and reasonably arose from the language of the charge, since to "frequent" a place means to visit often, to resort to often or habitually, and to frequent a saloon might mean that the minors entered it and remained in it at pleasure, and not merely that they assembled in the vicinity and sent messengers for liquor, especially as the selling habitually to an agent would convey the idea that the liquor was knowingly sold to be used by minors.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Frequent.]

**4. Libel and Slander ⬥15 — Actionable Words—Statutes—"Libel."**

A petition open to the construction that it charge a saloon keeper with selling liquor to minors or knowingly to their agents, exposed him to public hatred, contempt, ridicule, or financial injury, within Act 27th Leg. c. 24, § 1, defining "libel" as a defamation tending to injure the reputation of a person, and thereby expose him to public hatred, contempt, ridicule, or financial injury, etc.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Libel.]

**5. Libel and Slander ⬥19—Construction of Language Used.**

Where a petition remonstrating against the granting of a liquor license to a saloon keeper stated that minor boys were tempted to drink, an innuendo that this meant a violation of law in allowing them to purchase intoxicating liquors was a fair one.

**6. Libel and Slander ⬥19—Construction of Language Used.**

The statements in a petition remonstrating against the granting of a liquor license that minors were able to obtain liquor, and were tempted to drink, being open to the construction that defendant sold them liquor, or knowingly sold it to their agents, the persons making the charges could not escape the effects of their language by also stating therein that they believed the saloon keeper tried to run the place according to law, and that they laid no special blame upon him; it being impossible to conceive that liquor should be habitually obtained by minors without the seller discovering the fraud.

**7. Libel and Slander ⬥51(1)—Absolute Privilege—Effect of Malice.**

Absolute privilege is a defense, regardless of malice, since in the cases so privileged it is considered in the interest of public welfare that all persons should be permitted to utter their sentiments and speak their thoughts freely and fearlessly.

**8. Libel and Slander ⬥36 — Absolute Privilege—Matters Privileged.**

Absolute privilege against liability for libel extends only to proceedings of legislative bodies, judicial proceedings, and military and naval officers.

**9. Libel and Slander ⬥41 — Qualified Privilege—Privileged Matters.**

Qualified privilege extends to all communications upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty to a person having a corresponding interest or duty, and embraces cases where the duty is not a legal one, but one of a moral character or an imperfect obligation.

**10. Libel and Slander ⬥100(7) — Privilege—Necessity of Alleging and Proving Malice.**

Where a communication is qualifiedly privileged, the inference of malice is rebutted prima facie, and it devolves upon the party complaining to allege and prove malice.

**11. Libel and Slander ⬥38(1)—Privilege—Judicial Proceedings.**

Under Rev. St. arts. 7435, 7436, requiring applicants for liquor licenses to apply to the comptroller of public accounts for a permit, and authorizing him to issue a permit which is then filed with the county judge, and authorizing the comptroller under certain circumstances to revoke licenses, a petition filed with the comptroller protesting against any new license being issued to a saloon keeper is not privileged as a communication made in a judicial proceeding, and the publishers of the statements therein are guilty of libel if the accusations are made in bad faith and with malice.

**12. Libel and Slander ⬥36—Privileged Communications—Petitions to the Government.**

Such a petition is not absolutely privileged because of the right under the federal and state Constitutions to petition the government for a redress of grievances; there being no grievances against the government sought to be corrected by the communication.

**13. Libel and Slander ⬥36, 41—Privileged Communications — Petitions to the Government.**

Under Rev. St. art. 7435, requiring applicants for liquor licenses to apply to the comptroller of public accounts for a permit, and to file an affidavit showing that the applicant has not violated any of the laws in regard to selling to students or minors, etc., and providing for the issuance of a permit which shall be filed with the county judge, article 7446, requiring the county judge to set the application for hearing and give notice of the petition, and authorizing certain property owners to contest the granting of the license, and article 7436, authorizing the comptroller to revoke licenses, there is no statutory justification or authority for circulating a petition to the comptroller protesting against the granting of a new license to a saloon keeper months before the expiration of his license, and at a time when no application for a new license is pending, and charges therein against the saloon keeper are neither absolutely nor qualifiedly privileged, especially as in cases justifying communications between parties interested in a subject-matter, the privilege apparently does not apply when the communications are published and others not interested allowed to become acquainted with their contents, as is done by circulating a petition and obtaining signatures from any persons desiring to sign it.

Appeal from District Court, Medina County; R. H. Burney, Judge.

Action by Walter Koehler against W. L.

Dubose and others. From a judgment for defendants, plaintiff appeals. Reversed and remanded.

Davis & Long and Ward & Bickett, all of San Antonio, and V. H. Blocker, of Hondo, for appellant. Hertzberg & Kercheville and C. C. Harris, all of San Antonio, Mack Kercheville, of Devine, De Montel & Fly, of Hondo, and John T. Briscoe and R. L. Marshall, both of Devine, for appellees.

FLY, C. J. This is a suit for damages instituted by appellant against W. L. Dubose and 66 others. It was alleged that the damages arose from the publication and circulation of two written instruments. A general demurrer and special exception were sustained to the petition.

The first instrument was signed by appellees, and the other was not signed. The signed document is as follows:

"To the Hon. H. B. Terrell, State Comptroller, Austin, Texas:

"We, the undersigned, citizens, taxpayers and heads of families, including business men, doctors, ministers, lawyers, and school-teachers, residents of Devine, Medina county, Texas, want to file their remonstrance against the granting of a new license to one Walter Koehler, who operates a county line saloon on Bexar and Atascosa county lines, just inside of Bexar county.

"We submit that the place is within eleven miles of our town, and that there is no police protection at or near the place where the saloon is operated; that minors frequent the place from over a great section of this county and seem to experience no difficulty in finding some one who will buy the liquor for them.

"We are having trouble in our school on account of the temptation to boys that are in school, among whom are young men who are sent here from distance to our school.

"We further aver the fact to be that there are fights and brawls, constantly happening in and near the saloon, the same being on highway over which hundreds of people have to pass en route to San Antonio, and occasionally there are murders committed by drunken men; that only recently a boy from this town was cut and slashed by drunken Mexicans there, from which wounds he is not expected to live; that lives of women and children who must of necessity pass there are in danger.

"Wherefore we remonstrate against a new license being issued at the expiration of the present one.

"Dated at Devine this the 16th day of October, A. D. 1916.

"Respectfully submitted."

Signed by W. L. Dubose and 66 other defendants.

The unsigned instrument is as follows:

"To the Honorable H. B. Terrell, State Comptroller, Austin, Texas:

"We, the undersigned citizens, taxpayers and heads of families, including business men, doctors, ministers, lawyers and school-teachers, residents of Lytle, Atascosa county, Texas, take leave to file this our remonstrance against the granting of a new license to one Walter Koehler who operates a county line saloon on the Bexar and Atascosa county lines just inside the Bexar county line on the Laredo-San Antonio road.

"We submit that the place is within a mile and a half of our little town, and the place has no police protection whatever; that our minor boys have no trouble in finding some one who will buy liquor for them and that the place is operated to ruin and debauch the young men of this section, while they are yet of tender age and unable to withstand the temptation to drink on account of their minority.

"We pride ourselves in maintaining an extra good school, but we aver the fact to be that the saloon in a large measure counteracts our efforts in the direction of education and undoes the work of our school.

"We lay no special blame upon the man who operates the place, for we believe he tries to run the same according to law, but owing to the fact that there are no officers present to assist him, it is common practice for certain unscrupulous persons to buy for and deliver to minors all the liquor they want and that owing to the inherent hell in the commodity sold young men whom proud mothers had hoped to proffer their state and nation as good citizens, are in a fortnight converted into drunken wretches and laid at their feet.

"Wherefore we remonstrate against a new license being issued at the expiration of the present one.

"Witness our hands at Lytle, Texas, this the 16th day of October, A. D. 1916."

The two instruments were copied into the petition, and libel was declared upon them. If the instruments, or either of them, contain libelous matter, the general demurrer should not have been sustained, for the petition contains every allegation necessary to establish the cause of action, employing some pertinent innuendoes stated as arising from the publications of the papers.

In 1901 the Twenty-Seventh Legislature passed the first civil libel law ever enacted in Texas; prior to that time the common law being the only guide in libel cases, except in so far as certain publications had been penalized by the Legislature, such as the imputation of a want of chastity to a female. Hatcher v. Range, 98 Tex. 85, 81 S. W. 289; Guisti v. Galveston Tribune, 105 Tex. 497, 150 S. W. 874, 152 S. W. 167. It has been held, and we think properly so, that the law of 1901 was enacted to comprehend and embrace the entire subject of libel in civil causes, without reference to rules or precedents in this or other states. Not only does the statute cover all actionable cases of libel in this state, but it has given rights to those who are the subjects of libel, not accorded to them under the common law. The law, as enacted in 1901 (Acts 27th Leg. c. 26), is as follows, omitting the emergency clause:

"Section 1. A libel is a defamation expressed in printing or writing, or by signs and pictures, or drawings, tending to blacken the memory of the dead, or tending to injure the reputation of one who is alive, and thereby expose him to public hatred, contempt or ridicule, or financial injury, or to impeach the honesty, integrity or virtue or reputation of any one, or to publish the natural defects of any one, and thereby expose such person to public hatred, ridicule or financial injury.

"Sec. 2. In any action for libel the defendant may give in evidence, if specially pleaded, in mitigation of exemplary or punitive damages, the circumstances and intentions under which the libelous publication was made, and any public apology, correction or retraction made and published by him of the libel complained of. The truth of the statement or statements in such publication shall be a defense to such action.

"Sec. 3. The publication of the following matters by any newspaper or periodical, as defined in section 1, shall be deemed privileged, and shall not be made the basis of any action for libel without proof of actual malice.

"1. A fair, true and impartial account of the proceedings in a court of justice, unless the court prohibits the publication of the same, when in the judgment of the court the ends of justice demand that the same should not be published, and the court so orders; or any other official proceedings authorized by law in the administration of the law.

"2. A fair, true and impartial account of all executive and legislative proceedings that are made a matter of record, including reports of legislative committees, and of any debate in the Legislature and in its committees.

"3. A fair, true and impartial account of public meetings, organized and conducted for public purposes only.

"4. A reasonable and fair comment or criticism of the official acts of public officials and of other matters of public concern published for general information.

"Sec. 4. Nothing in this act shall be construed to amend or repeal any penal law on the subject of libel, nor to take away any existing defense to a civil action for libel, nor shall this act affect any suits now pending, or that may hereafter be brought upon a cause of action arising prior to the taking effect of this act."

[1] In section 4 of that law, it is distinctly and clearly provided that certain existing matters and things shall not be affected by the act, each matter being specified. The first is penal laws as to libel, the second, defenses to civil actions for libel, and the third, as to cases arising before the law was enacted. If the provision is clear as to penal statutes, it is equally clear as to defenses in civil cases. No one has ever questioned the fact that the law did not affect penal laws, and there can be no doubt that defenses existing theretofore in civil actions for libel are no more affected than are the penal laws of Texas. It would seem that no other reasonable construction could be placed upon the statute of 1901, and while setting aside all other definitions of libel, the Legislature retained the common-law defenses as well for all citizens as for the publishers of newspapers or periodicals. We cannot imagine that the right of pleading and proving that an alleged libel is a privileged matter has been taken away from all citizens except newspaper and periodical publishers, and no authority has been produced which holds that such is the case. Such an authority would be directly in the face of the statute. It is clear that no such holding was made either in Walker v. Light Pub. Co., 30 Tex. Civ. App. 165, 70 S. W. 555, or in Guisti v. Galveston Tribune, 105 Tex. 497, 150 S. W. 874, 152 S. W. 167. In each of those cases the courts were considering the question from the standpoint of the plaintiff, and not from that of the defendant. They were defining the rights of plaintiffs under the law and not the defenses guaranteed by the law. In the Walker Case the court was passing upon the propriety of the action of the trial court in sustaining a general demurrer to the petition, and it was

held that the statute gave the only definition of libel that could be used in this state, fully covering the subject. The matter of defenses was not considered. The sufficiency of the petition was the only question before the Supreme Court in the Guisti Case, and that part of the statute as to the preservation of common-law defenses was not adverted to or discussed. We hold that the language, "Nothing in this act shall be construed * * * to take away any existing defense to a civil action," preserved and secured to defendants all defenses as they existed at common law, except in so far as they may be affected by the definition of libel in the first section of the act. To hold that no one can have the benefit of the defense of a privileged communication except publishers would cause the man who advises his neighbor as to the character and ability of a doctor, lawyer, merchant, workman, or servant, or the witness who testifies as to matters affecting the character of another, or the judge who renders an opinion, to be without defenses against a suit for libel. It cannot be assumed that the Legislature intended to create any such condition, and the plain language of the statute evidences a desire to provide against any such condition of affairs. In the case of the opinions of judges rendered since the law of 1901 was enacted, and under facts occurring since that time, and in regard to questions asked of a witness by an attorney, it has been held that they were privileged communications. Allen v. Earnest, 145 S. W. 1101; Kruegel v. Cockrell, 151 S. W. 352. These decisions would have no foundation upon which to rest if the common law as to privileged communications had been destroyed by the statute.

[2] In 1917 the Legislature enacted an amendment to the law of 1901, which is article 5598 of the Revised Civil Statutes of 1911, as follows:

"Art. 5598. Nothing in this title shall be construed to amend or repeal any penal law on the subject of libel, nor to take away any now or * * * heretofore existing defense to a civil action for libel, either at common law or otherwise, but all such defenses are hereby expressly preserved."

The effect of that amendment was to more explicitly reserve common-law defenses, and the enactment of it cannot be deemed to be a legislative construction that the law of 1901 had deprived defendants of common-law defenses. It may be that the amendment was enacted to meet the fact that the part of the act of 1901 as to defenses was not inserted by the codifiers in the Revised Statutes of 1911. The fact that the part of the act in question was omitted from the statutes by the codifiers might create confusion and lead to the belief that a portion of the law had been repealed, and the Legislature deemed it essential or expedient to remove all doubts in connection with the matter. We hold that at no time since the enactment of the law of 1901 has any one, under proper

circumstances, been deprived of common-law defenses against libel. Berry v. State, 69 Tex. Cr. R. 602, 156 S. W. 626.

[3-5] In the first documents herein copied it was stated that:

"Minors frequent the place from over a great section of this county and seem to experience no difficulty in finding some one who will buy the liquor for them."

The innuendo that this charge conveyed the idea that appellant had been guilty of selling liquor to minors pertinently and reasonably arises from the language of the charge. To frequent a place means "to visit often; to resort to often or habitually." Black's Law Dict. p. 525, and authorities cited. To frequent the saloon as charged in the instrument might mean that the minors entered it and remained in it at pleasure, and not merely that they assembled in the vicinity and sent messengers for liquor. The innuendo in the petition to that effect was fairly drawn from the language, and also the selling to an agent habitually would convey the idea that the liquor was knowingly sold to be used by the minors. The charge tended to injure the reputation of appellant and "expose him to public hatred, contempt, or ridicule, or financial injury." The innuendo is also a fair one that the charge that the boys of the schools were being tempted meant a violation of law in allowing them to purchase intoxicating liquors. There are other innuendoes set forth in the petition fairly deducible from the language of the paper, which as a whole conveyed the impression that the saloon was the rallying place for boys in the surrounding country, and that they were being debauched by the use of liquor obtained from the saloon, and also that murder, assaults, and other crimes were committed with impunity in the saloon. ·

[6] The second instrument copied herein attempts to palliate and excuse the charges against appellant, but we do not think that persons making the charges contained in the paper can escape the effects of their language by stating that although liquor is sold to minors the saloon keeper is endeavoring to run the saloon according to law. It is impossible of conception that liquor should be habitually obtained by minors, through indirect methods, without the seller discovering the fraud. The charge against a person of crime cannot be robbed of its sting by constantly reiterating that, "He is an honorable man," as was attempted by the Roman orator at Cæsar's funeral.

The petition can be attacked upon only one other ground, which was set up by special exception, although the general demurrer raised it as it goes to the very life of the pleading, and that is that the two instruments were addressed by citizens on a public matter, to the comptroller of public accounts, who has the power and authority to grant, revoke, or refuse licenses to sell intoxicating liquors in Texas.

[7, 8] There are two classes of privileged occasions or communications, the first absolute privilege, and the second qualified privilege. In the former class it is considered in the interest of the public welfare that all persons should be permitted to utter their sentiments and speak their thoughts freely and fearlessly upon all questions and subjects, and no action for words so spoken or written can be sustained, although falsely made with express malice. This class of privileged matter is founded absolutely on public policy, and the question of malice cuts no figure in connection with it. Cases of absolute privilege are divided into three classes, and they are not extended by courts. They are:

"Proceedings of legislative bodies, judicial proceedings, and military and naval officers." Newell, Slander & Libel, § 505 et seq.

The instruments declared on in this case could by no manner of construction come within the purview of either of the cases named unless they be classed as judicial proceedings.

It is held that great latitude of speech is allowed to all persons in the conduct and management of all proceedings having for their end the administration of justice. In a free government it is essentially necessary in the preservation of rights that great freedom be allowed in the making of complaints and accusations with the end in view of having an investigation, the execution of the laws and the punishment of offenders, and in numerous instances it has been held that the privilege extends not only to regular courts of justice, but to all inquiries before magistrates, referees, municipal, military, and ecclesiastical bodies. Newell, Slan. & Libel, § 516, and list of authorities in note.

The American rule as to absolute privilege in judicial proceedings is not so broad, it would seem, as is the English, which absolutely exempts from liability in an action for libel or slander, judges, parties, counsel, and witnesses for language used in the course of judicial proceedings; but while the rule as to judges is the same as in England, the rule in this country is qualified to the extent that the defamatory words must be applicable, pertinent, or relevant, to the matter in hand. Hoar v. Wood, 44 Mass. (3 Metc.) 193; McLaughlin v. Cowley, 127 Mass. 316.

It has been stated that the American rule is that false accusations contained in affidavits or other judicial proceedings by which prosecutions for supposed crimes are commenced, or in any other papers in the course of judicial proceedings, are not absolutely protected, and the party making them is liable to an action if actual malice be averred and proved. Such affidavits cannot be made a cloak for private malice, but must be made in good faith to tribunals having jurisdiction of the matter. Newell, Slander & Libel, § 550, and cases reviewed.

Even. if the comptroller of public accounts be an administrative officer with quasi judicial powers, under which he could pursue an investigation as to a seller of intoxicating liquors, or has the power to grant or withhold a license for the sale of liquor, under the authority mentioned the party seeking such revocation or refusal to grant a license might be held for libel if he is actuated by malice in the charges he may make to gain such revocation or refusal of license.

[9, 10] Qualified privilege extends to all communications upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty to a person having a corresponding interest or duty, made in good faith, and the privilege embraces cases where the duty is not a legal one, but where it is of a moral character of imperfect obligation. The occasion on which the communication was ' made would rebut the inference of malice prima facie, and it would devolve upon the party complaining to allege and prove malice. Ashcroft v. Hammond, 197 N. Y. 488, 90 N. E. 1117; Flanagan v. McLane, 87 Conn. 220, 87 Atl. 727, 88 Atl. 96; Ott v. Murphy, 160 Iowa, 730, 141 N. W. 463.

[11] It cannot consistently be contended that a communication addressed to the comptroller is a paper filed in a judicial proceeding. That officer is placed by the Constitution in the executive department of the state, and he has no constitutional authority to perform any judicial act. Under the statute the comptroller, upon receiving an application to sell intoxicating liquors at retail, is authorized to issue a permit to the applicant, if satisfied that he is entitled to the same, and then the county judge is authorized to issue the license. Either the county judge or comptroller may, under certain circumstances, revoke the license to sell liquors. Articles 7435, 7436, Rev. Stats. It has been held that the enumerated powers given the comptroller are ministerial, and not judicial, and that if an attempt was made to confer judicial powers upon the comptroller, such attempt would be unconstitutional and void. Railway v. Shannon, 100 Tex. 379, 100 S. W. 138, 10 L. R. A. (N. S.) 681; Baldacchi v. Goodlet (Tex. Civ. App.) 145 S. W. 325.

The highest dignity that could possibly be conferred upon the acts of the comptroller in this connection would be to class them as quasi judicial, and we doubt that the communication could be even classed as proceedings in a quasi judicial proceeding, which is one resembling a judicial proceeding, the two being separated by intrinsic differences, however. The only ground, then, upon which the communications can be classed as privileged, is that they were drawn and addressed by parties prompted by a duty owed either to the public or to a third party, or that the parties have an interest in the subject-matter which is communicated to another having a corresponding interest, the parties making the communication in good faith and without actual malice.

To sum up the matter, we conclude that the communications were not made in a judicial proceeding, and that the publishers of the statements will be guilty of libel if it be shown that the accusations were made in bad faith and with malice towards appellant.

[12] It is contended that under the right of petition given by the state Constitution the communications addressed by appellees to a state officer are privileged. The right of petition has always been an Anglo-Saxon demand, and one of the grievances set forth in the Declaration of Independence against the English king was that he had answered their repeated petitions for redress "only by repeated injury." The first amendment to the federal Constitution reserves the right of "the people to peaceably assemble and to petition the government for a redress of grievances." It is clear that by the two documents mentioned the right to petition the government for governmental redress of injuries inflicted by governmental agencies was kept in view and sought to be preserved and protected. Upon those declarations, the declaration in the Bill of Rights of the Constitution of Texas is founded (article 1, § 27), which recites:

"The citizens shall have the right, in a peaceable manner, to assemble together for their common good, and apply to those invested with the powers of government for redress of grievances, or other purposes, by petition, address, or remonstrance."

The right of petition, guarded and protected by the Constitution, was not given to protect citizens who might attack the character or malign the acts of the individual citizen, although addressed to an officer of the state, but in every instance in which the right of petition has been sustained it has been when the object was to obtain some redress as to governmental acts or the exercise of some governmental agency general in its character. The right was not given to shield attacks upon private reputations or assaults upon private characters. No case is cited that will sustain the contention that citizens have the absolute privilege to attack the motives and assail the acts of a private citizen of libel no matter how much malice may have actuated those publishing the petition. The Constitution seeks to secure liberty and not licentiousness. In the case of Connellee v. Blanton, 163 S. W. 404, the petition was drawn for the pardon of a convict, was addressed to the Governor, and the alleged libel of which complaint was made was a criticism of the district judge who tried the cause. The communication was held to be for a redress of grievances against the government by the citizens, and was also a part of the judicial proceedings in the case. The court said:

"If the judicial proceedings which culminated in the conviction were absolutely privileged, why should not the same immunity be extended * * * to a higher power to annul that judgment in part?"

The criticism in the application was one of a branch of the government, and redress was being sought from another branch. Appellees ask:

"If you could not libel a district judge in a petition to the Governor, how could you libel a saloon man in a petition to the comptroller?"

The two are totally different, because one petition is for redress of a grievance against a branch of the government, and the other against an individual. We think the difference is apparent. None of the decisions cited by appellees sustain their contention. We think the case of Belo v. Wren, 63 Tex. 722, correctly decides the law applicable to this case, and we hold that petitions of the character of those circulated by appellees are not absolutely privileged.

There being no grievance against the government sought to be corrected by the communication to the comptroller, there being no complaint against his act or that of any other branch of the state government, the right given by federal and state Constitutions to petition does not authorize or justify the communication addressed to the comptroller, and it is pertinent to consult the statutes in regard to granting and revoking licenses to sell intoxicating liquors to ascertain if there is any authority given that would justify the circulation of a paper for signers in which a citizen is attacked and his character traduced. The two papers were evidently circulated promiscuously in the community, and it is presumable that many saw it who refused to sign either of them, for one intended for a certain locality failed to obtain any signatures whatever.

[13] It is provided in article 7435, Rev. Statutes, that any person desiring to obtain a retail liquor dealer's license shall, before filing his petition for such license, make application under oath to the comptroller of public accounts of this state for a permit to apply for the license. In that affidavit the person is required to swear that he has not violated any of the laws in regard to liquor selling, such as selling to students or minors, or permitting the latter to enter and remain in the place of business; as to the hours of closing the saloon, and others. Upon receiving the affidavit, which is set out in full in the statute, the comptroller after filing it and being satisfied shall, upon payment of $2, issue the permit, which, together with a copy of the application, shall be filed with the county judge. Upon such filing the person desiring the license shall file a petition as required by article 7435, and shall make certain required statements as to himself, and when the petition with the permit and affidavit from comptroller is filed the county judge shall set the same for hearing at a time not less than 10 nor more than 20 days from the filing of the same, and it is required that notice of the petition being filed shall be given, with the substance thereof, by posting on the courthouse door, and the petition shall be open for inspection to any one, and certain property owners may contest the granting of the license. That is the only method provided in the statute for contesting the issuance of a license to sell liquor. Article 7446, Rev. Stats.

There is nothing in the statute to indicate that it was ever contemplated that persons residing in the country surrounding the location of a saloon would be justified and authorized to circulate a communication to a state officer, months before the time for the expiration of a liquor license which is fixed by law, and with the knowledge of which time of expiration the parties are charged, in which communication the motives, the manner of conducting the business, and the dire results to the community are set forth and the request made that no other license shall be granted the liquor dealer when his license expires. No present action was requested in this instance of the comptroller but months afterwards when the license shall expire he is asked to take such action. The signers or publishers of the communication had no right or authority to presume that more than a half year afterwards appellant would swear to falsehoods in endeavoring to obtain a permit from the comptroller, or even that he would desire to continue the business in which he was engaged. No revocation of the license was sought or desired, no present relief was requested, but anticipating that months in the future a false and perjured application for a new license would be filed in the office of the comptroller, instruments filled with grave charges against the dealer were circulated in two counties, and months afterward sent to the comptroller.

By article 7436 the comptroller is given the authority to revoke liquor licenses, and it is indicated that information leading to such revocation may be obtained through secret information from any one; provision being made to prevent the disclosure of the informer. There is nothing in that statute, if a revocation had been sought, which would justify the circulation of defamatory matter addressed to the comptroller. There is nothing in the statutes of Texas authorizing or justifying the signing and publication of such publications as are declared on by appellant.

In cases justifying communications between parties both of whom are interested in the subject-matter, it does not seem to be contemplated that the communication should be made to any but the interested party, and when such communications are published and others not interested allowed to be-

come acquainted with their contents the character of privilege is removed and the status of libel fixed. Newell, Slan. & Libel, § 566.

The statute provides for the comptroller being satisfied before he grants a permit, and no doubt a citizen might agree with others to draw up a petition which each would sign, and present to the comptroller in order to prevent the issue of a permit to a man applying for the same and the communication would be privileged, but that would be a different proceeding from one in which a petition is circulated in a community and signatures obtained from any persons desiring to sign it, assailing the character and actions of a citizen who has not applied for a license and who might never apply. Privileged communications cannot be extended to that dangerous extent. Suppose appellant had not applied for another license; the injury to him would have been inflicted on an imaginary state of facts having no foundation whatever. It would be a singular rule that would say to him, that as he might apply for a license he could be libeled with impunity.

The method of communication may strip a privilege of its character and transform it into a libel. Publicity, unnecessary and uncalled for by the circumstances, may destroy a privilege and lay the publisher open to an action for libel. Thus in an English case it was held that a speech made by a member of Parliament was absolutely privileged, but if the speech was printed and circulated it would be libelous. Newell on Slander & Libel, § 428, subd. 10. It is stated to be the rule that, while a petition to the Legislature relevant to proceedings that are pertinent is absolutely privileged, a publication of such petition to others, not members of the Legislature, is not privileged. Newell, Slander & Libel, § 510. It would seem, therefore, that if the petition to the comptroller, properly handled, would have been privileged, it lost its privileged character by being published throughout the community.

The truth of the matter alleged in the documents circulated by appellees would be a complete defense to the action for libel. Rev. Stats. art. 5596; San Antonio Light Pub. Co. v. Lewy, 52 Tex. Civ. App. 22, 113 S. W. 574; Wheless v. Davis (Tex. Civ. App.) 122 S. W. 929. Of course the burden of alleging and proving the truth of the statements in the two instruments would rest upon appellees.

The judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

The defamatory statements made in the petitions circulated by appellees were not published to prevent the granting of a liquor license, or for the purpose of revoking one.

Had the petitions been circulated and then placed before the comptroller at a time when a request for a liquor license was pending before that officer, or if they had been made and presented to procure a revocation, a different case would have been presented. A revocation of appellant's liquor license was not sought, and he had made no application for a license to sell liquor. The petitions would have been just as pertinent, and the petitioners would have had the same right to plead privilege, if appellant had been running a grocery store instead of a saloon, and appellees had conceived the idea that he might at some time in the future desire a liquor license. This answers the excerpt from 25 Cyc. 389, and the other authorities are not in point that are cited in the motion. All of them are in regard to petitions or reports on matters pending before lawfully constituted authorities.

In order to remove any doubt as to some language used in our former opinion, we hold that the communications circulated by appellees were not absolutely or qualifiedly privileged, and that the only defense to any defamatory matter that may be contained in them is the truth of such matter.

The motion for rehearing is overruled.