Adopted December 9, 1890.

---

## NATHAN PATTEN v. A. H. BELO & CO.

### No. 6700.

1. **Libel — Truth of Publication a Defense.** — The principle is now generally recognized that the publication of the truth is a complete defense in an action for libel.

2. **Mitigation of Damages.**—Current rumor generally believed will not justify the publication if false and libelous; such facts, however, are admissible in mitigation.

3. **Pleading the Truth in Defense.**—The answer alleging the truth of the matters alleged as libelous in the petition means that the language and charge are true in the sense given by the plaintiff, in substance.

4. **Fact Case.**—See facts held sufficient to sustain a verdict for the defendant in an action for libel, the publication of which was admitted, either on the ground of the truth of the matter, or upon testimony negativing malice in the publication.

5. **Amended Petition in Action for Libel — New Matter.**— It was not error to sustain exceptions to allegations of new matter occurring subsequent to the suit, although relating to the original publication.

6. **Opinion.**—It was not error to exclude testimony of a witness "that the Galveston Daily News is reported and has the reputation of having the largest general circulation of any daily paper in the State, and has a greater power of moulding public opinion throughout the State than any other paper in it." So far as it was matter of opinion it was incompetent.

7. **Incompetent but Immaterial Testimony.**—When there is no dispute touching matters to which hearsay may have been admitted such would be no grounds for reversal, it not appearing likely that any injury could have resulted from the incompetent testimony.

8. **Records, etc., as Circumstances.**—As tending to establish the truth of the publication declared on as libelous it was competent to read copies from the records of the County Court and original papers from the Recorder's Court, where relevant.

APPEAL from McLennan. Tried below before Hon. Eugene Williams. The opinion gives a sufficient statement.

*Herring & Kelley*, for appellant.— The verdict of the jury is contrary to the evidence in that the overwhelming preponderance of the evidence shows that the article "M. M. Patten vindicated" was and is libelous; that by such preponderance the construction thereof, as shown by the innuendoes of appellant, was and is established, and that said article was inspired and published by defendants on account of actual malice towards appellant.

*Clark, Dyer & Bolinger*, for appellees.— The evidence showed that the alleged libelous publication was true and without malice and was not actionable, and the verdict was correct. Towns. on Sl. and Lib., secs. 388, 211, and notes; 4 Wait's Act. and Def., p. 311, and authorities; Stark. on Sl. and Lib., pp. 30, 61, 229.

HOBBY, JUDGE.—This is an action for damages, brought by Nathan Patten against the Galveston News, for the circulation and publication of alleged libelous matter of and concerning said Patten.

The suit was brought in the District Court of McLennan County on July 15, 1885.

The alleged libelous article was published in the News on the morning of May 23, 1885, and was set out in the petition as follows:

"MR. M. M. PATTEN VINDICATED.

" Mr. Moses M. Patten, a reference to whose arrest and confinement appeared in the News of Wednesday, was yesterday arraigned before the County Court on a charge of insanity as preferred against him by his father, Colonel Nathan Patten. After a voluminous amount of evidence, among which was the testimony of two physicians of the city— Drs. McClanahan and McJohnson—an unqualified verdict was rendered by the jury that they found the defendant of sound mind. This verdict, in the face of the trouble, annoyance, and humiliation to which Mr. Patten has been recently subjected, is a source of great gratification to his friends.

"Among the witnesses yesterday were some of the leading citizens of Galveston, and even upon the testimony for the prosecution the jury could not find sufficient ground for basing a verdict other than that of acquittal. The recent publicity given to the case from its nature has naturally done Mr. Patten a great injury, and his vindication yesterday upon a charge that seemed to be unfounded was thorough and convincing. As stated by Mr. M. M. Patten, and corroborated by others, principally Mr. Abe Swartz, Mr. Patten was made the subject of legal proceedings by his father, who, after disposing of his property, undertook by this means to establish right to act for an irresponsible party. If these facts be true, Mr. Patten has surely cause to feel aggrieved, and the denunciation of such treatment might be pardoned for being unduly demonstrative. While confined in jail he was visited by a large number of friends and acquaintances, who did all in their power to administer to his wants. Mr. Patten carries with him some very strong endorsements as to a thorough, competent, and reliable business man, worthy of any trusts that may be imposed. He has letters of endorsement of the most unqualified character from the management of the Galveston City Street Railway Company, with which company he was recently employed, and from Mayor R. L. Fulton, testifying to his integrity of character and strong business worth. Some of these letters were given Mr. Patten subsequently to his recent trouble to which he has been subjected.

"As a further testimonial of his thorough vindication that has followed Mr. Patten's trouble, he was entertained at the Beach Hotel yesterday as the guest of Colonel W. H. Sinclair, his former employer of the Street Railway Company; and as an evidence of Mr. Patten's magnanimity, it is given as a fact that he yesterday made his father a present of a check for $1000.

"The News trusts that Mr. Patten may soon recover from the annoyance and trouble that must necessarily have been incident to his recent unpleasantness."

The damages were laid at $25,000. On the 7th day of August the plaintiff filed a plea as a "supplement to his original petition," alleging the publication and circulation of another libel in its paper on July 16, 1885, as follows:

"WACO, July 15.—A damage suit for $25,000 has just been filed with District Clerk Beasley by Nathan Patten against A. H. Belo & Co. The suit has grown out of a publication by the News concerning the trial of M. M. Patten on a charge of lunacy."

And on the following day after this telegram there appeared in the News aforesaid the following editorial:

"The bringing of libel suits promises to become a leading industry in Texas one of these days. The law as it stands, or as it is judicially construed or constructed, perjury, barratry, conspiracy, blackmail, and gen-

eral knavery, and people addicted to all or any of these accomplishments and enterprises are bound to seek or make opportunities for their development."

Damages for $15,000 for injury in this behalf to name, fame, credit, feelings, etc., were also claimed.    The defendant filed exceptions to this last petition, which the court sustained.

The defendants answered by a general denial, and pleaded that the publication was made without malice, etc., towards the plaintiff; that it was made in good faith, and related to a matter which had become public and notorious by reason of the conduct of appellant and his son with reference to their business and other differences.    That on May 21, 1885, plaintiff filed in form of law a complaint against his son charging him with being insane, who was thereupon taken into custody; that pending said arrest, and as a matter proper for public information, defendants published, on the 21st of May, 1885, a notice of said arrest with comments thereon; that a trial was had of appellant's son in the proper court on the charge made against him, which resulted in his acquittal and discharge from custody; that after his release he preferred a written complaint against plaint iff charging him with forgery, and alleging that he had fraudulently signed the name of M. M. Patten & Co. to a transfer of certain property, etc., which prosecution is still pending against plaintiff.

It is further alleged in the answer that after the release of appellant's son, and the night before the publication of the article set forth in the petition, he came to the business office of defendants and complained that he had been annoyed and injured by the publication of the notice of his arrest, and demanded that he be set right before the public.    Thereupon, at his suggestion and with his approval, the article which is the foundation of this suit was prepared and published as a satisfaction to him, etc. The truth of the matter published was also pleaded.

There was a trial before a jury, which resulted in a verdict for the defendants, and the plaintiff prosecutes this appeal.

The innuendo of the plaintiff, or the meaning given by him to the statement, was that it charged him with being guilty of false swearing, false imprisonment, and a fraudulent disposition of the property of his son and the appropriation of the same to his own use; and that to accomplish the latter he had by a false and unfounded complaint of insanity made by him against his said son, sought to consign him to a lunatic asylum.

Such was the appellant's construction of the language, and to which the truth in justification, as before stated, was pleaded, as well as other matters in defense; among which was, in substance, that the publication was made with no malice or ill will towards the plaintiff, but that it had been the subject of common rumor and current discussion on the streets of Galveston; that it had been undergoing judicial investigation; was be-

lieved to be true, so represented to defendants, and that their motive was to give information of public events, etc.

We shall consider and dispose of the assignments of error without regard to the order in which they are presented in the brief of the appellant.

The seventh assignment is that "The verdict of the jury is contrary to the evidence, in that the overwhelming preponderance of the evidence shows that the article 'M. M. Patten vindicated' was and is libelous; that by such preponderance the construction thereof, as shown by the innuendoes of appellant, was and is established, and that said article was inspired and published by defendants on account of actual malice towards appellant."

There was no controversy between the parties as to the fact of publishing and circulating by the News the article upon which this action is predicated at the time and place alleged. This is in effect conceded by the appellees. It is therefore only necessary for us, under the assignment, to recite that portion of the evidence relating to the question raised for the purpose of ascertaining whether it established the fact that the article was, in the language of the assignments "inspired and published by defendants on account of actual malice toward appellant."

The facts disclosed by the record are substantially as follows: Appellant's son, M. M. Patten, was in May, 1885, engaged in the business known as the water and sprinkling business, in the city of Galveston. He went North in April, 1885, and placed the business in the hands of the plaintiff, who during his absence disposed of the property belonging to the business and gave a bill of sale to the purchaser of the same.

Plaintiff testified that after his son's return, about the middle of May, 1885, he became flighty and violent, and upon the advice of physicians and others he reluctantly filed a complaint of lunacy against him, he then being in jail. A notice of the arrest of plaintiff's son and that he was in custody under this charge was published in defendants' paper on May 21, 1885. A trial was had in the County Court of Galveston County of the charge made by plaintiff against his son. The physicians at whose suggestion plaintiff stated he filed the complaint testified to the sanity of his son, and the trial resulted in a verdict by the jury acquitting the plaintiff's son of the charge, and he was discharged from custody.

Upon his release, the plaintiff's son, accompanied by the witness Mr. Abe Swartz, went to the News office, and it appears from the evidence was emphatic and pronounced in his expressions of dissatisfaction and annoyance at the publicity given to his arrest, and appeared to be impressed with the belief that he had been unjustly treated by the publication of the notice and had been wronged by plaintiff, whom he charged with attempting to get possession of his property. It was in proof that the article was then prepared by defendants, upon the facts and information furnished by plaintiff's son, who approved of the article published on May 23, 1885, and on which this suit is founded.

It was in proof also that plaintiff's son filed a written complaint before the city recorder of Galveston, charging plaintiff with having executed a bill of sale to the property before mentioned without authority, and with having appropriated to his own use the proceeds of the sale of the same.

There was a conflict in the testimony as to the authority given plaintiff by his son to dispose of the property, and as to whether the latter approved of his father's action in disposing of it. On the one hand we have the statements of the plaintiff and his son to the effect that such was the case. On the other there are circumstances which may have authorized a different conclusion.

The rule permitting the truth to be pleaded in justification of the action, it is said, is of comparatively modern origin. Towns. on Sl. and Lib., p. 330.

Prior to about 1706 it was admissible under the general issue in mitigation but not as a justification. It seems to be admitted that the principle is now generally recognized that the publication of the truth is a complete defense. Id., 327.

It is no justification that prior to the publication it was a matter of current report and common rumor and generally believed. Nor is the belief in the truth merely a justification. But it is said "the defendant may prove in mitigation facts showing a ground of suspicion not amounting to actual proof of the charge, or which tends to a proof of the truth and yet falls short of it." Id., and note 5.

The truth, pleaded in justification of the defamatory language, means that the language and charge is true in the sense given it by the plaintiff, in substance. Id., 331.

If the truth of the charge is established by proof the plaintiff would not be entitled to recover, because he can not be said to be damaged by the loss of or injury to a character he did not possess. Such is the principal reason given why it is a defense complete in itself.

To sustain the assignment of error attacking the verdict on the grounds stated therein, we would be compelled to hold that there is nothing in the facts recited tending to establish the appellees' defense of the truth in justification of the alleged libelous matter; or we would be required to say that the plaintiff has shown the charge to be both defamatory and false, from which the inference of malice could be drawn, and to further say that the evidence develops no circumstances from which the jury might have found that the defendants may reasonably be supposed to have had proper, just, or worthy motives in making the publication.

If the verdict in favor of the defendants is properly construed to be a finding by the jury that the defense of the truth in justification, pleaded by defendant, was established by the evidence, we would not in that event feel authorized to hold that the testimony was wholly insufficient for that purpose, without violating familiar precedents.

If, however, the verdict in behalf of the defendants was rendered upon

the theory that the statement published was shown by the proof to be both defamatory and false, and from which the law inferred malice, but that this malice was repelled by proof of circumstances showing that the defendants' motives in making the publication were proper, and there was no further evidence of malice—if this be the correct interpretation of the verdict, we could not say that there was no evidence from which the jury might have so found.

Whatever, then, may be the true reading of the verdict, or upon whatever theory it may have been rendered, we think no further comment on the facts is necessary to show that they are sufficient to sustain the verdict, and that the assignment of error is not well taken.

The first assignment is that "The court erred in sustaining the defendants' exceptions to the amendment or supplement to the original petition." There was no error in sustaining the exceptions to it.

The exclusion of the testimony of the witness M. V. McMahan, to the effect "that the Galveston Daily News is reported and has the reputation of having the largest general circulation of any daily paper in the State, and has a greater power of moulding public opinion throughout the State than any other paper in it," is assigned as error.

There was no controversy as to the circulation of the News. This, as well as the fact of the publication of the article, was proved. The remaining fact sought to be established by the witness was merely a matter of opinion, and objectionable. That it was coupled with a fact competent and admissible did not render that which was objectionable in law less so. Hence the court did not err in excluding the answer.

The fourth assignment relates to the admission, over the plaintiff's objections, of the testimony of the witness Abe Swartz.

The substance of his testimony was that appellant had no interest in the water sprinkling business at Galveston of the firm of Patten, Swartz & Co.; that he was an employe of the firm; that M. M. Patten went north in April, 1885. He was detained there until the middle of May on account of sickness. That appellant's son testified under oath, and told witness and others, that appellant had no authority to sell or transfer his interest in the water business. The witness stated that he was present at the time appellant's son visited the News office and made the statements on which the article was published, and that appellant's son then charged the appellant with having robbed him, and said he had no authority to sell his property.

The objection made to this evidence was "that it consisted in hearsay statements and declarations of M. M. Patten made while appellant was not present, not binding on nor admissible against him."

The appellant himself testified that his son had charged him with having robbed him. Cornelius Ennis, a witness in the case, testified also to

the same effect, and that he stated that the appellant had no authority to dispose of his property, and had done so and converted it to his own use.

The testimony of the witnesses Jenkins and Bryan was full and specific as to the same statements made by appellant's son, as furnishing the basis for the article published in the News of the 25th of May, 1885. If any portion of the answer of the witness Swartz was inadmissible, it is difficult to understand how it could have affected appellant injuriously, as the same facts, in substance, were testified to by other witnesses without objection. Independently of this, the testimony was admissible for the purpose of enabling the jury to ascertain the motive and intent actuating the defendants in making the publication. So, too, the answer of the witness S. T. Fontaine, city recorder, containing an exhibit, which was the complaint of appellant's son, charging appellant with forgery, etc., and appropriating the proceeds of the sale of certain property to his own use, was admissible as a circumstance supporting the plea of the truth in justification, and to contradict the testimony of the plaintiff to the effect that he was authorized to dispose of said property, and his son was satisfied with his sale of the same.

The proceedings also, certified under the seal of the county clerk, in the County Court of Galveston County put in motion by the affidavit of plaintiff against his son were properly admitted. They related to a judicial investigation, a proper matter of comment by appellees, were in support of the plea of the truth of the publication; and were proper to be considered by the jury in determining the motive of the defendants in publishing the article. They were required to be entered of record by article 119 of the Revised Statutes. The court did not err, as claimed by appellant, in admitting the evidence referred to.

The last assignments of error, which relate to the refusal of the court to give instructions requested, are too general to be considered.

We think the judgment should be affirmed.

*Affirmed.*