### HERALD NEWS CO. v. WILKINSON.*
(No. 1279.)

(Court of Civil Appeals of Texas. El Paso. Feb. 16, 1922. Rehearing Denied March 30, 1922.)

1. **Libel and slander ⬦49—Newspaper article charging plaintiff with being German spy, smuggling, etc., held not privileged.**

A newspaper article claimed to charge plaintiff with being a German agent or spy and with smuggling property to Mexico for shipment to Germany, etc., *held* not privileged.

2. **Pleading ⬦228—Exception for vagueness and indefiniteness properly sustained to allegations in answer that plaintiff was confederating with persons unknown, etc.**

In an action for libel based on newspaper articles claimed to charge plaintiff with being a German agent or spy, etc., and with smuggling goods to Mexico for shipment to Germany, an exception for indefiniteness was properly sustained to allegations in answer that plaintiff was consorting with persons whose names defendant did not know, but who were exporting goods from the United States for delivery to its enemies.

3. **Libel and slander ⬦56(1)—No defense that plaintiff guilty of offenses similar to those imputed to her.**

In an action for libel, a plea of justification must justify the charge alleged, and it is no defense that plaintiff has been guilty of offenses other than those imputed to her, although of a similar character.

4. **Libel and slander ⬦54—Truth held a defense to action for charging plaintiff with being a German spy, etc.**

Though newspaper articles claimed to charge plaintiff with being a German agent or spy and with smuggling goods to Mexico for shipment to Germany, etc., were not privileged nor qualifiedly privileged, the truth of the facts stated would be a defense to at least a portion of the defamatory matter under Rev. St. 1911, art. 5598, as amended by Acts 35th Leg. (1917) c. 206, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 5598), preserving existing defenses.

5. **Libel and slander ⬦100(3)—Truth cannot be proved under general denial.**

In an action for libel, the truth of the defamatory matters cannot be proved under a general denial.

6. **Libel and slander ⬦56(2)—Good faith in publishing articles charging plaintiff with being spy, etc., held not a defense.**

In an action for libel based on newspaper articles claimed to charge plaintiff with being a German spy or agent and with smuggling goods to Mexico for shipment to Germany, the fact that during the war there was a great activity of German agents in Mexico, and that defendant's subscribers were vitally interested in the details thereof, and that the articles were purchased from a reliable news agency and believed by defendant to be true, and that it relied on the good standing of such agency and the indorsement of government officials who stated that the writer of the articles was a United States secret agent, was not a justification, under Vernon's Sayles' Ann. Civ. St. 1914, art. 5596, since good faith is not a justification when the libelous matter is not privileged or qualifiedly privileged.

7. **Libel and slander ⬦7(10)—Articles charging plaintiff with being German spy, etc., held libelous per se.**

Newspaper articles referring to plaintiff as a German spy or agent and charging her with smuggling goods to Mexico, some of which were intended for shipment to Germany, *held* libelous per se.

8. **Libel and slander ⬦7(10)—Charge that another used plaintiff as a lure to obtain information for Germany from army and navy officers held libelous.**

Statements in newspaper articles that an associate of plaintiff used plaintiff as a lure and gave lavish entertainments with funds furnished by "Von Bernsdorff," inviting army and naval officers, and, with the aid of numerous Germans, pumping them for information calculated to further the progress of "Kultur," *held* libelous under Vernon's Sayles' Ann. Civ. St. 1914, art. 5595, and Acts 36th Leg. (1919) c. 25 (Vernon's Ann. Civ. St. Supp. 1922, art. 5597), defining libel, etc.

9. **Libel and slander ⬦7(10)—Charge that plaintiff was smuggling goods to Mexico held libelous.**

Newspaper articles referring to plaintiff as a smuggler and charging her with smuggling goods to Mexico *held* libelous under Vernon's Sayles' Ann. Civ. St. 1914, art. 5595, and Acts 36th Leg. (1919) c. 25 (Vernon's Ann. Civ. St. Supp. 1922, art. 5597), defining libel, etc.

---

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Second petition for rehearing denied June 15, 1922, and writ of error dismissed for want of jurisdiction May 17, 1922.

**10. Libel and slander ⊜⇒16—Not necessary that indictable offense be charged; "libel."**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 5595, and Acts 36th Leg. c. 25 (Vernon's Ann. Civ. St. Supp. 1922, art. 5597), defining libel, etc., the offense charged need not be one indictable and punishable at common law or under the statute; it being sufficient if the written or printed defamation tends to subject plaintiff to public contempt or impeaches her integrity or reputation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Libel.]

On Appellee's Motion for Rehearing.

**11. Pleading ⊜⇒364(1)—Allegations of truth of statements not charged to be libelous, but which would have tended to show truth of libelous charge, held improperly stricken.**

In an action for libel based on newspaper articles referring to plaintiff as a German agent and stating in part that the writer of the articles purchased presents for her and called on her on a "fishing expedition," in which plaintiff alleged that this was intended and understood to mean that plaintiff was a German agent and spy and possessed of information of German activities, affairs, and intentions inimical to the United States, the truth of other statements in the articles concerning plaintiff's association with the writer of the articles and her belief at the time that he was a German agent or sympathizer, though such statements were not alleged to be libelous, would have tended to show the truth of the charge that plaintiff was a German agent and spy, and a paragraph alleging the truth thereof should not have been stricken.

**12. Pleading ⊜⇒364(1)—Allegations of truth of statements improperly stricken as truth would have tended to show truth of alleged libelous charge.**

In an action for libel based on newspaper articles claimed to charge that plaintiff was a German agent or spy, allegations of the truth of statements that the writer of the articles was masquerading as a German officer, and plaintiff believed him to be such and permitted him to assist in packing trunks with merchandise introduced into Mexico in violation of law, etc., *held* improperly stricken, as the truth of such matters would, if proven, support a finding that plaintiff was a German agent or spy.

**13. Libel and slander ⊜⇒94(4)—Allegations that facts were as set out held sufficient allegation of truth of statements complained of to the same effect.**

In an action for libel, an allegation that in fact the writer of newspaper articles complained of was masquerading as a German officer, and that plaintiff believed him to be such, etc., *held* equivalent to allegations that statements in the articles to this effect were true.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by Maria Wilkinson against the Herald News Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Jackson, Isaacs & Fryer, of El Paso, for appellant.

Neill & Armstrong, of El Paso, for appellee.

WALTHALL, J. Appellee, Maria Wilkinson, a feme sole, brought this action against appellant, Herald News Company, a Texas corporation, to recover compensatory damages by reason of the publication in its newspaper, the El Paso Herald, of certain statements of and concerning her and alleged to be defamatory and libelous, and stating the articles published.

Appellant answered by general demurrer, special exceptions, general denial, special denial that the publication of said articles meant to say and was understood to mean that appellee was a German spy, and by special plea alleged that the published articles were privileged; by special pleas alleged that the articles were true, and in the alternative, in mitigation of damages, appellant alleged its good faith in the publication of the articles.

The case was tried with a jury and submitted upon the general issue. The jury returned a verdict in favor of appellee and assessed the damages at $8,500, for which amount judgment was rendered.

Appellee is a citizen of the United States and resides at Nogales, Ariz. The publication of the statements or articles complained of are lengthy, covering about 21 pages of the record. Separate portions of the articles were published by appellant in the El Paso Herald on the 16th, 18th, and 19th days of November, 1919, the total circulation of the paper at that time being about 25,000 copies, of which the circulation of the Herald in Arizona was about 3,700, and of that number there was a circulation of about 290 copies in Nogales, Ariz., and Sonora, Mexico, just across the line.

The published articles upon which the suit was based, abbreviated, contained, substantially, the following:

"American Agent Cures Gen. Calles and Falls in with Female German Spies Smuggling Goods to Mexico.

"Dr. Paul Bernardo Altendorf, Late 'Agent Al' in the Military Intelligence Department of the U. S. Army. Twelfth Installment." (Omitting the statement of the treatment of General Calles the article proceeds:) "While all this was going on I was living at Hotel Cohen. On returning to the hotel one day, Marks, the proprietor introduced me to two handsomely dressed women, remarking that I was a 'good doctor,' who was also a 'good German.' On the strength of this recommendation, the elder of the two, Maria Haas, promptly asked me to see her two year old boy,

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

who was ill. * * * In with the smugglers. Her (Maria Haas's) companion, Maria Wilkinson, * * * she said was the widow of an American miner who helped her smuggle goods across the border for German firms. She was going to make a pretense of offering the goods in Hermosillo, displaying them in the hotel sample rooms to deceive any chance American agents who might be about, then she would pack them up and deliver them to the German consignees at Guaymas and elsewhere down the line. * * * She (appellee) told me all about how she was taking the goods to Culiacan to be delivered, but like the Haas woman, she would make a pretense of offering them for sale at Hotel Rosales there. * * *

### "Helps Pack Smuggled Goods.

"Her six trunks contained 74 dresses, 18 silk skirts, 60 dozen pair of silk stockings, 37 silk waists, 45 cotton waists, 100 gross of rubber nipples (Germany was very short of rubber then, and this part of the consignment was intended to be forwarded via Spain and submarine to the Fatherland) [the publication enumerating many other articles of goods]. * * *

### "Locates Smuggled Goods.

"After reaching Guamas I saw the goods, or a part of them at least, that I had packed a few evenings before, displayed in the windows of Melchoir, successors and of Gaston Schwab, the latter a good German Masquerader as a Swiss firm. * * * She (Maria Haas) related with glee how she had posed as a 'society' woman opening a luxurious mansion in San Francisco with the fascinating Wilkinson as a lure, and gave lavish entertainments, all paid for with funds furnished by Von Bernstorff, making a point of inviting army and naval officers to these functions, and with the aid of numerous German agents, pumping them for information calculated to further the progress of Kultur. * * * (Here the article goes into detail as to the movements of Maria Haas and appellee, and how he got acquainted with prominent German people through them, which, for brevity, we omit. Proceeding the article stated:) In the next issue Dr. Altendorf will tell of further relations with the women spies. * * * She (appellee) said she was to return to the border in six weeks with Maria Haas for another consignment of goods for blacklisted German firms which would be smuggled, or passed through the custom house if there was no other way. * * * (We here omit a lengthy statement of a Yaqui attack on the train and other matters not important to this investigation.)"

"Maria (appellee), Mrs. Cohen, the landlady, and I breakfasted together. Maria (appellee) announced that she was going to Nogales, January 3, on another smuggling excursion. * * * She had been requested to bring in as many revolvers as she could since she could sell them at a good price to the Mexicans. I tried to persuade her not to go, * * * for I knew she was clever at the smuggling game, * * * but Maria's motto was, 'business before matrimony.' "

The evidence discloses some features of the publications we will restate somewhat in detail under the propositions to which they refer.

The first, second, and third propositions are directed to the refusal of the court to grant, on motion, a postponement or continuance of the case; but, having concluded that the case should be reversed and remanded on other grounds, we do not discuss the propositions in detail, but overrule the assignments because without merit.

[1] The publication of the matters found in the record are not privileged, under our statutes, as insisted by appellant under its fourth proposition.

[2, 3] The fifth proposition complains of the action of the court in sustaining an exception to the portion of appellant's answer in which it is alleged that appellee was consorting and confederating with persons other than those named in the published articles, the truth of which consorting and confederating was alleged by appellant as a defense. Appellant pleaded as defensive matter:

"That the plaintiff was at or about said time consorting and confederating with other persons whose names defendant does not know, who were engaged in the business of exporting goods from the United States for delivery to the enemies of the United States with whom residents of the United States were forbidden by law to trade."

Appellee excepted to the above portion of the answer on the ground that same was too vague; the persons with whom appellee was consorting and confederating with were not named; the articles exported are not stated; the enemies of the United States are not named. We think there was no error in sustaining the exception. Also, it is not a defense to libel that the plaintiff has been guilty of offenses other than those imputed to her, even though the offense was of a similar character. Sun Printing & Pub. Ass'n v. Schenck, 98 Fed. 925, 40 C. C. A. 163. The plea must justify the charge alleged. Dowie v. Priddle, 216 Ill. 553, 75 N. E. 243, 3 Ann. Cas. 526; Downs v. Hawley, 112 Mass. 237.

Appellee pleaded as libelous that appellant published of and concerning her that Altendorf purchased and presented to her a wrist watch and a bottle of perfume with the view of obtaining information from her, and that she accepted same with every indication of appreciation; she believing at the time that he was a German agent and German sympathizer. By the innuendo immediately following the above-published statement, appellee alleged that by the statement it was meant that appellee was a German agent and spy and that she had information having to do with German activities, affairs, and intentions hostile to the United States.

Appellant pleaded in defense that said Dr. Altendorf did purchase a wrist watch and bottle of perfume and present same to

appellee, and that through same he endeavored to obtain from her information concerning German activities; that appellee received and accepted said presents, and associated with said Altendorf, and at the same time she so received said presents and associated with said Altendorf she believed him to be a German agent and German sympathizer. The court sustained an exception to that portion of the answer on the ground that same constituted no defense, and could not be considered in justification or mitigation of the compensatory damages sued for and was otherwise immaterial and irrelevant. The ruling of the court is made the basis of the sixth proposition.

[4] Appellant's contention is that the fact pleaded, if true, would have been a strong circumstance tending to show that appellee was consorting and co-operating with German enemies of the United States. Appellee suggests that the tendered and stricken answer does not present a defense to the action for compensatory damages, and so falls short of a justification. While the published articles were not privileged, nor were they qualifiedly privileged, yet the truth of the facts stated, we think, would be defensive to at least a portion of the defamatory matter charged.

It has been held by a number of our courts, in this state, including the Supreme Court, that the truth of the facts published is a sufficient defense to an action for libel. Patten v. Belo & Co., 79 Tex. 41, 14 S. W. 1037; Cotulla v. Kerr, 74 Tex. 90, 11 S. W. 1058, 15 Am. St. Rep. 819; Kuhn v. Young, 78 Tex. 346, 14 S. W. 796; San Antonio Light Pub. Co. v. Lewy, 52 Tex. Civ. App. 22, 113 S. W. 574; Wheless v. W. Y. Davis & Son (Tex. Civ. App.) 122 S. W. 929.

Article 5598 of the Revised Civil Statutes 1911, as amended by chapter 206, 35th Leg. (1917) p. 474 (Vernon's Ann. Civ. St. Supp. 1918, art. 5598), provides that—

"Nothing in this title shall be construed to amend or repeal any penal law on the subject of libel, nor to take away any now or at any time heretofore existing defense to a civil action for libel, either at common law or otherwise, but all such defenses are hereby expressly preserved."

[5] We think the facts pleaded by appellant and stricken out under the exception would tend at least to establish the truth of a portion of the libelous matter charged. The truth of the defamatory matters cannot be proved under general denial. Towne's Texas Pleadings, p. 565. So it was error for the court to sustain exceptions and strike out any pleadings by defendant which detailed the matters of the publication which it sought to prove to be true as a defense. Kuhn v. Young, 78 Tex. 345, 14 S. W. 796.

[6, 7] The seventh and eighth propositions complain that the court was in error in sustaining an exception to its answer, alleging, in substance, that during the period of our war with Germany there had been great activity of German agents in Mexico, and a great part of such activity had been in connection with the Carranza government, and the people of the United States, especially patrons and subscribers of appellant's publication, were vitally interested in the details of such German activities in Mexico, and the articles of which appellee complained were prepared by Altendorf and syndicated by the McClure Newspaper Syndicate, who sold same to appellant for publication; that the syndicate was a news agency of many years standing, reliable and recognized as such by the newspaper world; that appellant believed the matters stated to be true. The answer then stated that it had seen letters from a number of army officers named, Department of Intelligence, etc., all of which letters stated that Altendorf, who wrote said articles, was during the said war engaged as a secret agent of the United States government operating in Mexico, etc.; that appellant relied upon the good standing of the syndicate, the indorsement of the government officials named, etc., and published same solely as a matter of news. The plea is lengthy, but is, in effect, a plea of good faith.

We think the court was not in error in sustaining the exception. The matters published are libelous, per se, and are not privileged under our statutes as they are now written; none of the matters constituted a defense to the action brought for compensatory damages. We understand the rule to be that where the libelous matter is not privileged, nor qualifiedly privileged, the issue of good faith in the publication of a libelous defamation is not a justification for the publication. Article 5596, Vernon's Sayles' Texas Civil Statutes.

[8, 9] By the ninth proposition appellant complains of the charge of the court instructing the jury that the following portions of the published articles are libelous and to return a verdict for appellee as to said portions, namely:

"She (Maria Haas) related with glee how she had posed as a society woman, opening a luxurious mansion in San Francisco with the fascinating Wilkinson woman as a lure, and gave lavish entertainments, all paid for with funds furnished by Von Bernsdorff, making a point of inviting army and naval officers to these functions, and, with aid of numerous Germans, pumping them for information calculated to further the progress of Kultur."

Also the following portions of the published articles:

"Smuggling Goods to Mexico." "In with Smugglers." "Helps Pack Smuggled Goods." "Locates Smuggled Goods." "Maria (appellee) announced she was going to Nogales, January 3d, on another smuggling excursion. I tried to persuade her not to go, holding out as an

inducement our marriage on my return from Mexico City, for I knew she was clever at the smuggling game, and if I could prevail upon her to abandon it, that would be so much gained, but Maria's motto was 'business before matrimony.' "

[10] Under this proposition appellant contends that to make a publication libelous per se, the offense charged must be one which is indictable and punished at common law or under the statute, and cites authorities. We do not concur in appellant's contention.

In Guisti v. Galveston Tribune, 105 Tex. 497, 505, 150 S. W. 874, 877, 152 S. W. 167, the Supreme Court said:

"It is immaterial that the article did not charge plaintiff with the commission of crime in the sense of violating the penal laws of this state, for it is no longer essential to constitute a publication libelous that it should charge an offense denounced by the penal code of the state or by the common law, but it is sufficient if the written or printed defamation tends to subject plaintiff to public contempt or impeaches her integrity or reputation."

See article 5595, Vernon's Sayles' Texas Civil Statutes, and Acts 36th Leg. (1919) c. 25, p. 34 (Vernon's Ann. Civ. St. Supp. 1922, art. 5597).

For reasons stated in discussing the sixth proposition, the case is reversed and remanded.

On Appellee's Motion for Rehearing.

[11] Our attention is called to an error in the opinion in sustaining appellant's sixth proposition under its seventh assignment of error, and referring to a portion of the alleged libelous matter not elsewhere found in the opinion. The petition alleged:

"That by the sentence and expression in the above publication, 'In this connection I recall how Schwiertz had made love to the King girl in Mexico City to obtain information, and decided to try this German weapon on a German agent. I invested in a wrist watch and a bottle of perfume costing $28.00 American gold, and set out for Culacan to call on the Wilkinson woman, on another fishing expedition,' defendant meant to say and was understood to mean that plaintiff was a German agent and spy, and that the said Dr. Paul Bernardo Altendorf set out, through the medium of a false love, to obtain information from her concerning German activities, affairs and intentions, thereby indicating that plaintiff was possessed of information having to do with German activities, affairs and intentions inimical to the United States."

In reply thereto the defendant, in the sixteenth paragraph of its answer, pleaded:

"Defendant further alleges that the said Dr. Paul Bernardo Altendorf did purchase a wrist watch and a bottle of perfume and present same to the plaintiff, together with other presents, and that the plaintiff received and accepted said presents, and associated with the said Dr. Altendorf, and at the time she so received said presents and associated with the said Altendorf she believed him, the said Altendorf, to be a German agent (or at least a German sympathizer), and that the said Dr. Paul Bernardo Altendorf did make love to the plaintiff, and through same did endeavor to obtain information from her concerning German activities."

Plaintiff excepted to the above portion of the answer:

"Because the facts therein alleged, if they are facts, constitute no matter of defense, nor would the existence of such facts warrant the defendant in libeling plaintiff, nor could they be considered in mitigation of damages; and plaintiff further excepts for the reason that the so-called Dr. Altendorf is not a party to this suit, and therefore the alleged defensive matter is immaterial and irrelevant."

The trial court sustained the above exception to the above-quoted portion of the answer. The statements in the opinion as to the pleadings of plaintiff and defendant are not accurate, as complained of in the motion, and we copy each as they appear in the record to make the correction. Appellant's proposition 6, under its seventh assignment, complaining of the action of the court in sustaining the above special exception to the above portion of the answer, reads:

"The plaintiff pleaded as libelous a part of one of the articles that plaintiff published of and concerning the plaintiff to the effect that Von Altendorf stated that he purchased a wrist watch and a bottle of perfume and presented them to the plaintiff, who accepted same with every indication of appreciation, with the view of obtaining information from the plaintiff. Defendant pleaded the truthfulness of the publication, and that plaintiff accepted and received such presents and associated with Altendorf, believing at the time that he was a German agent and German sympathizer. Plaintiff specially excepted to all of said paragraph, which exception was by the court sustained, and paragraph 16 stricken from defendant's answer."

Appellant's contention under this proposition is that it is competent in defense of the truth of said publication to show that Altendorf had in fact presented plaintiff with the watch and perfume, and that she accepted same, and that when she did so she believed Altendorf to be a German spy or German agent; that such proof would have been a strong circumstance tending to show that the plaintiff was consorting and co-operating with German enemies of the United States; that the circumstances attending a transaction are frequently more convincing than the proof of a specific fact.

It will be noted, plaintiff alleges, that, by the quotation from the libelous matter, defendant meant to say that plaintiff was a German agent and spy, and that through the medium of a false love Altendorf set out to obtain the information mentioned. The stricken answer, while alleging the truth of

the giving and acceptance of the gifts stated, alleges matters not charged to be libelous, such as plaintiff's association with Altendorf, and her belief at the time of such association that Altendorf was a German agent (or at least a German sympathizer).

While the stricken answer alleges matters not charged in the publication, and not included in the innuendo as charging plaintiff with being a German agent or spy, the answer charges the circumstances attending the giving and acceptance of the gifts. The question presented is not without difficulties, but we have concluded that defendant should be permitted to show the circumstances under which the gifts were made, and under which plaintiff accepted them, her apparent appreciation of them at the time when she thought Altendorf was a German agent and under such circumstances her association with Altendorf, as tending to show the truth of the charge, and in connection with other similar charges, that plaintiff was a German agent and spy. One combination of circumstances might not be sufficient to satisfy the mind of a court or jury of the truth of a charge, while more than one, however slight, if they tend toward the same conclusion, that is, tend to show the same fact charged, might do so. We think the statement that Altendorf "decided to try this German weapon on a German agent" would not be fully understood unless he was permitted to show what had led up to the use of that expression, and the result as well, that is, the presentation of the gifts and her acceptance of them, her association with Altendorf thereafter, her belief at the time that Altendorf was an enemy to her country, and at the same time permit Altendorf to make love to her, as Schwiertz did to the King girl in Mexico City, and through such combination of circumstances he endeavored to obtain the information stated, having to do with German activities and affairs, as charged in the innuendo.

The eleventh proposition charges error in striking paragraph 5 of the second trial amended answer.

[12, 13] In effect this paragraph charged the truth of the following matters in the publication:

"In fact, Dr. Altendorf was masquerading and holding himself out as a German officer. * * * That plaintiff believed him to be such, * * * permitted him to assist in packing trunks with merchandise introduced into Mexico in violation of the espionage act. * * * That while acting under the belief that he was a German officer, * * * she did, by written warning, advise him that an American agent had informed the American consul * * * that a dangerous German spy was registered at the Hotel Rosales * * * and urged him to be careful * * * and prevailed upon her brother-in-law to permit said Altendorf to store his personal effects with him, believing all the time that said Altendorf was a German agent."

Again, this must be held error. These were allegations of fact which amounted to pleading the truth of the matters contained in the publication, in that they were strong circumstances which would have, if proven, been sufficient to support a verdict by the jury that she was in fact a German agent, and even a German spy, if they had concluded that the language of the articles meant to charge her with being a spy. True, the answer does not use the term the statements are true; but they are so stated that they clearly charge the matters contained in the publication to be true, which is the same, if not better, pleading.

As an illustration of the effect of striking out the matters pleaded in detail, the appellee in answer to one of appellant's propositions suggests that there is no evidence that Dr. Altendorf was an American agent.

The effect of striking out the matters above enumerated was to preclude the defendant from introducing its evidence in these respects, because it could not do so under general denial.

The motion is sustained to the extent of making a correction of the pleadings of plaintiff and defendant, and passing upon the eleventh proposition omitted in the opinion, but as to all other matters contained in the motion it is overruled.

HIGGINS, J. (concurring). I concur in overruling the motion for rehearing upon the the ground that the court erred in sustaining an exception to the fifth paragraph of appellant's second trial amendment. The only reply that appellee makes to the eleventh assignment complaining of this ruling is that the exception sustained is not contained in the record. But the fact remains that an exception to paragraph 5 was sustained, and it does not seem to me that it was subject to any exception. The only effect of the failure of the record to show the exception sustained is to require this court to consider whether paragraph 5 was subject to any exception.